### UNITED STATES v. LA PLANT.

(District Court, D. South Dakota, N. D. May 6, 1911.)

1. INDIANS (§ 38*)—INDIAN RESERVATION—OFFENSES—JURISDICTION.

A prosecution for felonious homicide, alleged to have been committed on an Indian reservation, is not maintainable in a federal court, under Act Cong. March 3, 1885, c. 341, 23 Stat. 362, 385, giving jurisdiction to the federal courts of crimes committed on Indian reservations in certain cases, where the indictment did not allege that either the defendant or the person killed was an Indian.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 22, 64, 66; Dec. Dig. § 38.*]

2. INDIANS (§ 38*)—FEDERAL COURTS—JURISDICTION—CRIMES ON WITHDRAWN INDIAN LANDS—STATUTES—CONSTRUCTION.

Act Feb. 2, 1903, c. 351, 32 Stat. 793 (Cr. Code, § 329),† provides that the District Courts of the United States for the district of South Dakota shall have jurisdiction of proceedings in which any person shall be charged with specified crimes, including homicide, committed on any Indian reservation in that state. *Held*, that such act became inoperative, in so far as any particular reservation was concerned, on the extinguishment of the Indian title.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 22, 64, 66; Dec. Dig. § 38.*]

3. INDIANS (§ 38*)—FEDERAL COURTS—CRIMES ON INDIAN RESERVATION—INDIAN TITLE—EXTINGUISHMENT.

Act Cong. Feb. 2, 1903, c. 351, 32 Stat. 793 (Cr. Code, § 329),† confers federal jurisdiction over certain crimes committed on Indian reservations in South Dakota. Act May 29, 1908, c. 218, 35 Stat. 460, opened part of an Indian reservation in that state to settlement, including the land on which the offense in question was committed. Section 2 of the act provided that, prior to the proclamation of the Secretary of the Interior, he was authorized in his discretion to permit Indians who had an allotment within the area described to relinquish the same and receive in lieu thereof an allotment anywhere within the respective reservations "thus diminished," to which reservations the Indians might belong. Section 5 provided for the reservation of town-site tracts, which the Secretary was authorized to have surveyed into blocks and lots. *Held*, that the Indian title to land not included in town sites was extinguished at the time the act was passed, or the proclamation issued, and as to land included in town sites at least when the town-site map was filed after survey; and hence a subsequent crime committed on a lot within such town site was not within the jurisdiction of the federal courts.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 22, 64, 66; Dec. Dig. § 38.*]

Orvilla La Plant was indicted for an offense alleged to have been committed on an Indian reservation. On demurrer to indictment. Sustained.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† U. S. Comp. St. Supp. 1911, p. 1686.

E. E. Wagner, U. S. Atty., of Mitchell, S. D., for the United States.
H. G. Fuller, of Milbank, S. D., and P. C. Morrison, of Mobridge, S. D., for defendant.

WILLARD, District Judge. This case stands upon a demurrer to the indictment. The first ground stated in the demurrer is that the indictment does not state facts sufficient to constitute an offense. The second ground is that the court has no jurisdiction of the offense. Only the second ground will be considered.

[1] The case was argued upon the assumption, by counsel, that the defendant, Orvilla La Plant, and the person killed, George Martin, were both white persons. Upon this assumption the jurisdiction of this court cannot be based upon Act March 3, 1885, c. 341, 23 Statutes at Large, 362, 385, giving jurisdiction to the federal courts of crimes committed on Indian reservations in certain cases. Draper v. United States, 164 U. S. 240, 17 Sup. Ct. 107, 41 L. Ed. 419. Even without this assumption, the jurisdiction could not be maintained under that act; for the indictment does not allege that La Plant is an Indian, or that Martin is an Indian.

[2] The jurisdiction must rest upon Act Feb. 2, 1903, c. 351, 32 Stat. 793, carried forward into the Criminal Code, where it appears as section 329. This section provides, in part, as follows:

"The Circuit and District Courts of the United States for the district of South Dakota shall have jurisdiction to hear and determine all actions and proceedings in which any person shall be charged with the crime of murder, manslaughter, rape, assault with intent to kill, assault with a dangerous weapon, arson, burglary, or larceny committed within the limits of any Indian reservation within the state of South Dakota."

It has been suggested that this act refers to reservations as they existed when the act was passed in 1903, and that, the place where the offense in this case was committed being within the Cheyenne River reservation as it then existed, the court has jurisdiction. That contention, however, cannot be sustained, in view of what was said by the Circuit Court of Appeals of this circuit with reference to this act in Hollister v. United States, 145 Fed. 773, 777, 76 C. C. A. 337, 341. It is there said:

"The act of February 2, 1903, ex vi termini became inoperative so far as any particular reservation was concerned upon the extinguishment of the Indian title. Bates v. Clark, 95 U. S. 204, 208 [24 L. Ed. 471]; Buster v. Wright, 135 Fed. 947, 952 [68 C. C. A. 505.]"

[3] The question, therefore, is whether or not on the 20th day of March, 1911, when this offense was committed, the place where it was committed was within an Indian reservation. That place, according to the indictment, was included in the land opened to settlement by Act May 29, 1908, c. 218, 35 Statutes at Large, 460. It is claimed by the United States Attorney that that act did not diminish the reservation, so as to exclude the land therein referred to. In section 2 of the act, however, is found the following proviso:

"Provided, that prior to the said proclamation the Secretary of the Interior, in his discretion, may permit Indians who have an allotment within the area described in section 1 of this act to relinquish such allotment and

to receive in lieu thereof an allotment anywhere within the respective reservations *thus diminished* to which reservations the said Indians may belong."

No other meaning can be given to the words italicized than that the reservations were diminished, and they were diminished by the act itself. The word "thus" so indicates. It appears, therefore, that Congress intended to diminish the reservations at the time the act was passed, and necessarily thereby to extinguish the Indian title to the part excluded. It is claimed, however, by the District Attorney, that any such intention which might be gathered from the proviso, above quoted, is rebutted by section 9 of the act. That section declares that the United States does not guarantee to find a purchaser for the land, does not agree to buy the land, and acts only as trustee. But a trustee has not only the legal title, but he has also the right to possession, and the fact that the government is to act as trustee for the Indians does not indicate that their title has not been extinguished. There is nothing in section 9 providing that if the land is not sold it shall be turned back to the Indians. The government simply agrees to hold the money realized from the sale of the land, whenever it receives it, for the benefit of the Indians.

Referring again to the case of Hollister v. United States, the question is whether the Indian title to this land has been extinguished. To determine that it is important to know what the Indian title was. In Buttz v. Northern Pacific Railroad, 119 U. S. 55, at page 66, 7 Sup. Ct. 100, at page 104 (30 L. Ed. 330), it was said:

"The lands in controversy and other lands through which the Northern Pacific Railroad was to be constructed were within what is known as Indian country. At the time Act July 2, 1864 [13 Stat. 365, c. 217], was passed, the title of the Indian tribes was not extinguished. But that fact did not prevent the grant of Congress from operating to pass the fee of the land to the company. The fee was in the United States. The Indians merely had a right of occupancy, a right to use the land, subject to the dominion and control of the government."

It must have been the intention of Congress by the act of 1908 to extinguish the title at some time. The question is whether, as to land not included in town sites, the intention was to extinguish the title at the time the act was passed, or at the time the proclamation of the President was issued, or at the time the homesteader entered upon the land, or at the time he had made partial payments thereon, or at the time he had made the full payment. The practical inconvenience which would result from holding that the intention was to extinguish the title at any other time than when the act was passed, or the proclamation issued, is very apparent.

The question here concerns the relative jurisdiction of the state courts and the federal courts. It is important to definitely know over what land the state courts have jurisdiction and over what land the federal courts have jurisdiction, and to say that the Indians' right to occupy the land thus opened for settlement continued until the land had been paid for, or partially paid for, would be to hold that the entryman and the Indian would have the right to occupy the same land at the same time. It would be to hold that a white person had a

right to occupy detached portions of the land, while the Indian had a right to occupy other detached portions thereof. In a great many cases it would be difficult, if not impossible, to determine, in such case, whether the offense was committed on a tract of land over which the United States had jurisdiction, or a tract over which the state courts had jurisdiction.

There is another element in this case which is of importance. Section 5 of the act of 1908, authorizes the Secretary of the Interior "to reserve from said lands such tracts for town-site purposes as in his opinion may be required for the future public interests, and he may cause the same to be surveyed into blocks and lots." The indictment alleges that the Secretary of the Interior had designated a part of section 31 on the land thus opened for sale as the town site of Dupree, had caused it to be surveyed into blocks and lots, and that the offense was committed on one of the lots in that town site. It thus appears that the Secretary of the Interior had reserved this land for a town site. If at the same time it is to be considered a part of an Indian reservation, it has been reserved for two purposes. When the town-site map was filed, the streets and public places must have been dedicated to the public. Congress could never have intended that the Indian right of occupation as to those streets and public places should continue. It must be that, if the offense had been committed upon a street of this town site, it would have been within the jurisdiction of the state courts. If it is to be said as to the lots the title was extinguished only when they had been sold and paid for, there would be difficulty in determining, in a particular case, whether an offense had been committed within the limits of a lot which had been sold and disposed of, and the title to which had been extinguished, or within the limits of an adjacent lot, which had not been sold and disposed of, and as to which the title had not been extinguished, and that difficulty would have to be overcome before it could be determined whether the state courts or the federal courts had jurisdiction.

The case of Buster v. Wright, 135 Fed. 947, 68 C. C. A. 505, is a case involving a town site similar to the one here in question, laid out on lands belonging to the Creek Nation; and it was said in that case (135 Fed. at page 958, 68 C. C. A. at page 516) that the facts disclosed no extinguishment of the title of the Creek Nation. The title of the Creek Nation, however, rested not upon the original occupation of the land by the Indians, but upon a patent to the nation by the United States, and the act providing for the laying out of town sites, provided (135 Fed. at page 951, 68 C. C. A. 509), that upon the payment of the purchase price each vendee should receive a deed from the Principal Chief of the Nation, approved by the Secretary of the Interior.

It is ordered that the demurrer be and the same is hereby sustained, solely on the second ground stated therein, to wit, that the court has no jurisdiction of the case; and, the District Attorney having indicated his intention to remove the case into the Supreme Court of the United States, it is ordered that the defendant be released on his own recognizance in the sum of $10,000.