## UNITED STATES v. FRANK BLACK SPOTTED HORSE.

(District Court, D. South Dakota. May 18, 1922.)

1. **Criminal law ⊂⇒304(5)—Judicial notice taken that location described is within unorganized county.**

   Under an indictment for murder alleged to have been committed within the limits of the Rosebud Indian Reservation, the court may take judicial notice that the location described is in what is known as unorganized territory within the state of South Dakota, and embraced within the unorganized county of Todd.

2. **Criminal law ⊂⇒304(2)—Matter of common knowledge that Indian reservation embraces isolated tracts to which government title is extinguished.**

   It is a matter of common knowledge that, when the state of South Dakota by Laws 1901, c. 106, ceded, and Congress, by Act Feb. 2, 1903 (Comp. St. §§ 1009, 10503), assumed, jurisdiction of offenses committed on the Rosebud Indian Reservation, there were within the boundaries of such reservation isolated tracts, the title to which had been extinguished so far as the government was concerned.

3. **Indians ⊂⇒38(2)—Federal jurisdiction over offenses on reservation held to include all territory within its boundaries, notwithstanding extinguishment of government title.**

   It was the intent and purpose of Laws S. D. 1901, c. 106, ceding, and of Act Cong. Feb. 2, 1903 (Comp. St. §§ 1009, 10503), assuming, jurisdiction of offenses committed on the Rosebud Indian Reservation, to cede and assume the entire jurisdiction within the boundaries of the reservation, and such jurisdiction continues over all territory within such boundaries, notwithstanding the extinguishment of the government's title to particular tracts by conveyances to individual Indians.

4. **Criminal law ⊂⇒304(2)—Conditions existing at time of state's cession of jurisdiction to Congress held matter of common knowledge.**

   It is a matter of common knowledge, of which the court takes judicial notice, that when the state of South Dakota, by Laws 1901, c. 106, ceded, and Congress, by Act Feb. 2, 1903 (Comp. St. §§ 1009, 10503), assumed jurisdiction of offenses committed on the Rosebud Indian Reservation there were in the state of South Dakota six or seven reservations extending over great empires of territory, involving the interests of different tribes and bands of Indians, and that it was the policy of the government at the first moment possible to relieve the individual Indian of his tribal relation and make of him a citizen of the United States.

5. **Public lands ⊂⇒112—Government parts with title on signing of patent and entry in record in Secretary's office.**

   The government parts with its title to land upon the signing of the patent by the Secretary of the Interior and the making of the last entry in the record in the Secretary's office, though the patent is not delivered.

Frank Black Spotted Horse was indicted for murder. On demurrer to the indictment. Demurrer overruled.

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

S. W. Clark, U. S. Atty., of Redfield, S. D., P. J. Tscharner, Asst. U. S. Atty., of Rapid City, S. D., and E. D. Barron, Asst. U. S. Atty., of Sioux Falls, S. D.

Hayes & Heffron, of Deadwood, S. D., for defendant.

ELLIOTT, District Judge. The defendant, Frank Black Spotted Horse, by the indictment heretofore filed in this court, is charged with the crime of murder, alleged to have been committed in the jurisdiction of this court, within the limits of the Rosebud Indian Reservation in the state of South Dakota.

Before pleading, counsel for the defendant filed a demurrer to the indictment, urging the sole question that the place of the alleged homicide was not within the jurisdiction of this court, in that the place where the homicide is alleged to have occurred was at the time of the alleged offense, and is, not within the limits of the Rosebud Indian Reservation, for the reason that after the passage of the act of the Legislature in 1901 (Laws 1901, c. 106) ceding jurisdiction of offenses committed within the limits of Indian reservations within the state, and the passage of the act of Congress (Act Feb. 2, 1903, c. 351, 32 Stat. 793 [Comp. St. §§ 1009, 10503]) assuming such jurisdiction, the government by good and sufficient patent thereto had parted with its title to this isolated tract of land, upon which it is alleged the offense was committed, to the Indian to whom it was allotted.

This does not affirmatively appear upon the face of the indictment. Counsel for the government, however, concede the fact, and both counsel for the government and for the defendant urge the court to pass upon this jurisdictional question, to the same extent and as fully as if the admission were contained in the indictment itself. After a careful consideration of the rather novel situation that is presented by this demurrer, the court has been compelled by force of existing conditions to an attempted analysis of the intent and purpose of the Legislature of the state of South Dakota in ceding the jurisdiction of the territory within the limits of the boundaries of the reservations in the state, and the action of Congress in assuming that jurisdiction.

It was said by Judge Adams in Hollister v. United States, 145 Fed 773, 76 C. C. A. 337, that, under the conditions existing at the time of this legislation, the obligation cast upon the legislative and executive departments of the government to administer upon and guard the tribal property, and determine when and upon what conditions it should be vested absolutely in the individual Indian, as declared in the decisions therein referred to, disclosed the appropriateness and wisdom of the policy of reserving to United States courts criminal jurisdiction over certain offenses specified in the act of February 2, 1903. It was a reasonable thing, in line with the paternal duty imposed upon the nation, to make a demonstration to its wards in the vicinity of their abode of the benefits and advantages of a well-governed community. If it was the duty of the nation to care for them as its wards, and to develop them into a condition of civilized life

and merited citizenship, power to adopt all reasonable methods to that end, of course, existed.

[1] I think the court may take judicial notice of the fact that the location described in this indictment is located by the allegations in the indictment, in what is known as unorganized territory within the state, and embraced within the unorganized county of Todd. The conditions exist there to-day that existed at the time of this legislation. The reservations exist just as they existed at that time, barring one difference, and that is the extinguishment of the title of the United States to such isolated tracts as had theretofore been allotted and were thereafter allotted to the individual Indians. It is a matter of common knowledge, as stated in Hollister v. United States, that the Indian title is being rapidly extinguished. My judgment is that that language was used in the Hollister Case in connection with the conclusion that follows it, where the court says:

"Accordingly the ceding of jurisdiction by the state of South Dakota may well be considered a mere temporary expedient, relieving the state for the time being from burdens, which, for want of power to impose taxes upon property of Indians, had become heavy and difficult to bear, and as permissible and worthy co-operation with the national government in the discharge of its duties and obligations towards the Indians. For the reasons just suggested, the relinquishment of limited jurisdiction such as is involved in this case, comes fairly within the general legislative power of the state."

Especially considering the suggestions of the court just before the foregoing, expressing the common knowledge that the Indian title is being rapidly extinguished, and that we may reasonably expect in the near future, such progress as to leave few, if any, Indian reservations in existence. These reservations can be abolished. There is no claim in this record here, nor has either counsel claimed, that this reservation has been abolished. The contention of counsel for defendant is that the reservation has been diminished to the extent of the 40-acre tract, 80-acre tract, or 160-acre tract, that the government parts title with. It is a well-known policy of the government—has been and is, especially of the Indian Department—to develop within these Indians the experience and knowledge that entitles them to recognition as citizens of the United States and pass their title in fee to them.

[2, 3] When this law was enacted, when this jurisdiction was ceded, and when it was assumed by Congress, it is a matter of common knowledge that there were, all over all of these reservations, and within the boundaries of the reservations, isolated tracts, the title to which had been extinguished as far as the government was concerned. There were tracts that were deeded to individual Indians, for one reason or another, especially because of their responsibility and qualifications as individuals, entitling them to citizenship. There was no exception made in the cession of jurisdiction, or the assuming of jurisdiction. There was no exception made as to these particular tracts. The legislation was as to the land "within the limits of the reservations." There has been no legislative action by Congress limiting this reservation, changing the boundaries of the particular reservation in question, or opening to settlement any of the lands in, or

in the vicinity of, the reservation or the land in question. I am constrained to believe it was the intent and purpose of the Legislature of the state to cede, and of Congress to assume, jurisdiction of all of the lands as they existed, within the boundaries of the reservations as they existed at the time of the legislation, and that in so far as the land in question here, because that is as far as we need to consider it, in the absence of an act of Congress opening that country to settlement, and disintegrating the reservation, remarking and changing the reservation boundaries, marking the changes, or abolishing it entirely, the jurisdiction of the United States remains unimpaired, just as it was upon the passage of the act of the Legislature of the state of South Dakota ceding the jurisdiction of crimes named in the statute within the limits of this reservation, and thereafter assumed by the act of Congress.

[4] I am therefore of the opinion that it was the intent and purpose of both the Legislature and of Congress that the entire jurisdiction within the boundaries of these reservations was ceded and assumed. I am impressed with the necessity of this construction. It is a matter of common knowledge, a matter of which the court should take judicial notice, as to the conditions that existed at the time of the passing of the laws by the Legislature of the state and at the time of the passage of the act by Congress. In the great state of South Dakota were six or seven reservations, extending over great empires of territory, involving the interests of different tribes and bands of Indians. The policy of the government at the time of the enactment of this legislation was to, at the first moment possible, relieve the individual Indian of his tribal relation and to make of him a citizen of the United States. That was the pronounced policy of the government toward these Indians, well understood by the members of the Legislature and the people of the state.

It is a well-known fact, understood by both the Legislature and Congress at the time of the enactment of this legislation, that there were isolated tracts of land scattered throughout all of these reservations to which the title of the United States had been extinguished by deeding it to Indians to whom it had been allotted, because of their qualifications for citizenship and other reasons. Now, there was no action by the Legislature excepting the jurisdiction of isolated tracts within the boundaries of these reservations that had theretofore been deeded to the Indians. It occurs to me that, in the absence of that exception, the act is applied to all territory within the boundaries, within the plain language of the statute. Now, if there existed these isolated tracts to which title of the government had been extinguished at the time of the passage of the act, and they were not excepted then, isolated tracts, the title to which is extinguished, within the boundaries of this reservation, after the passage of the act or acts, would not be relieved, unless there was some specific act whereby they were taken out of the operation of the statute. It may be said that the mere giving of the patent by the government extinguished the title, operated to take it out of the reservation, and therefore out of the jurisdiction that is sought to be exercised here. The answer to that

is that if, at the time of the passage of the act, there were isolated tracts, the title to which had been extinguished in the same way, and no exception was made as to them, and jurisdiction was taken as to all of them at the time of the passage of the act, that would evidence an intent and purpose of the Legislature to give, and of Congress to assume, jurisdiction over those tracts, as well as the others to which the title was not extinguished when the law passed, and would apply with equal force to tracts afterwards released in the same way, isolated tracts.

Now, as to the practical effects of the decision or determination of this court. It is with hesitation that the court assumes questionable jurisdiction, especially jurisdiction which involves the sacred rights of citizenship. And yet what are the conditions? They are no other or different in that unorganized county than when this law was passed. The reason for the action sustained by the Court of Appeals in Hollister v. United States exists now, and with just the same force as then. The duty of the government is no greater and no less toward these Indians, and the intent and purpose of Congress as it existed then is just as important now. If the contention of the defendant is to be adopted, then this jurisdiction changes and has changed from the date of the passage of the act, the two acts, and to what extent you cannot tell. We do not know. It would be absolutely impracticable to force upon this court the determination of its jurisdiction, dependent upon the mere fact of the government parting with its title to an isolated tract of property without any legislative expression whatever with reference to it, even though such isolated tract is within the limits of the reservation as it existed at the time of the passage of the acts in question by the Legislature and Congress.

[5] Here is a great state, involving in these reservations hundreds and thousands of acres. I assume that, practically every day in the year since these acts were passed, there are transactions in Washington with reference to the transfer of these titles on these different reservations. Not a day passes but there are changes by the government passing its titles to tracts of land somewhere within the boundaries of these reservations. It is an established principle of law that the government parts with its title upon the action of the Secretary of the Interior signing the patent and making the last entry in the record in the Secretary's office. That passes the title. It is not like the passing of the title from one individual to another; the delivery is not essential. The title passes by the action of the officers in Washington with reference to it. The patent issues to some Indian in this particular reservation. We all understand that these patents lie there in the office of the Secretary of the Interior for weeks, perhaps for months, and many of them for years, and yet the title to these tracts has passed, as a matter of law. It is just as well understood that the patents in the past, and since the passage of these acts, have been sent out to the agents of the respective reservations, and there placed in the safe, instead of being delivered to the Indian, and many of them have not yet been made public. The patents repose in the safe of the Indian agent at the agency; the fact that it is issued known on

the reservation only to him or the clerk, if either of them have taken time to note the fact. See where we would be with an interpretation that changes the jurisdiction of the court with the parting of title by the government, with the issuance of the patent at Washington, and the making of the last entry in the office of the Secretary of the Interior. No record here. The Indian makes no report of its transfer, if he knows there has been a transfer.

If the contention of the defendant is to be adopted, then all of these patents that have been issued, no matter when or where they are, extinguish the title of the government, and therefore the jurisdiction of this court. I can see how impracticable it would be, and such a determination would necessitate the Department of Justice, as far as this district is concerned, having some agent down there notifying the district attorney regularly and continuously of the changes made, to the end that the jurisdiction might be determined. This, I think, was never the purpose of this legislation.

It is the judgment of the court that the demurrer should be overruled, and an order may be entered to that effect, with an exception to the defendant.