STATE, Respondent, v. SAUTER, Appellant.

(205 N. W. 25.)

(File No. 5526. Opinion filed August 12, 1925.)

1. **Criminal Law—Trial—Appeal and Error—Change of Counsel During Course of Trial Did Not Entitle Defendant to Dismissal or Separate Trial as Matter of Right.**

    Change of counsel by accused, necessitated by withdrawal of counsel, during the coure of trial for murder did not entitle defendant to a dismissal or separate trial as a matter of right.

2. **Criminal Law—Trial—Accused Entitled as Matter of Right to Reasonable Time to Make Preparation for Trial.**

    Where change of counsel is necessitated by withdrawal of counsel for accused during trial, accused as a matter of right is entitled only to such time as is reasonably necessary to enable substituted counsel to proceed intelligently with the trial.

3. **Criminal Law—Trial—Appeal and Error—Grant of Additional Time to Make Preparation for Trial Discretionary With Trial Court, and Court's Ruling Not Disturbed, Except for Abuse.**

    Granting of additional time to make preparation for trial is matter of discretion with the trial court, and its judgment therein will not be disturbed, except for abuse.

4. **Criminal Law—Trial—Waiver—Defendant, Waiting Until Trial is in Progress to Move for Separate Trial, Waived Right Thereto.**

Disagreement between accused and his co-defendants as to story of homicide previously agreed upon, necessitating change of counsel during course of murder trial, held not to entitle accused to separate trial; his right thereto having been waived by failure to demand same before entering on trial.

5. **Criminal Law—Evidence—Manslaughter—Evidence, Though Unsatisfactory, Held Sufficient to Support Conviction for Manslaughter.**

In a prosecution for murder, testimony of codefendants held sufficient to support conviction of manslaughter, notwithstanding their former false testimony and their interest rendered their testimony very unsatisfactory.

6. **Criminal Law—Newly Discovered Evidence—New Trial for Newly Discovered Evidence Not Allowed, Where no Affidavit by Witness is as to Proposed Testimony, and no Assurance That Testimony of Witness Would be Different Than at First Trial.**

Affidavit that since murder trial one of codefendants had made statement that accused was innocent, and other codefendant stated that their testimony on stand was false, did not entitle defendant to new trial for newly discovered evidence, inasmuch as there was no affidavit by codefendants to this effect, and there was no assurance that their testimony on new trial would be different than at first trial.

7. **Criminal Law—Trial—Testimony of Codefendant at Preliminary Hearing, Read into Evidence by Reporter, Held Not Prejudicial.**

In prosecution for murder, where court permitted reporter who took testimony given by accused's codefendant at preliminary hearing to read such evidence into the record, such testimony was not prejudicial, inasmuch as it tended to absolve defendant from all blame, and after its admission defendant's theory of defense was changed during course of trial, and such testimony before close of trial was conceded by all parties to be false so that it would have no weight with jury either way.

8. **Indians—Courts—Indian Territory—State Court Held to Have Jurisdiction of Crime Committed Within Boundary Lines Originally Constituting Indian Territory, in View of Statute Changing Such Lines.**

Though the crime of murder was committed within the bondary lines originally constituting an Indian reservation, in view of Act May 29, 1908, whereby the territory in which offense was committed was excluded from reservation, state

court had jurisdiction of the crime, and Cr. Code, U. S. Sec. 329 (U. S. Comp. St. Sec. 10503), was inapplicable.

Appeal from Circuit Court, Dewey County; Hon. W. F. Eddy, Judge.

Henry Sauter was convicted of manslaughter in the first degree, and he appeals. Affirmed.

*W. M. Potts,* of Mobridge, and *P. O. Urban,* of Timber Lake, for Appellant.

*Buell F. Jones,* Attorney General, and *George H. Puder,* State's Attorney, of Timber Lake, for Respondent.

POLLEY, P. J. In this case the defendants John Pfaff, Katie Pfaff, and Henry Sauter were tried for murder. Separate trial was not requested by either of them, and they were all put upon trial together. Julius Skaug and T. C. Burns appeared as counsel for all the defendants. After the trial had been in progress one or more days these attorneys announced to the court that facts had come to their knowledge that made it impossible for them longer to properly represent all the defendants, and that they wished to withdraw as counsel for defendant Sauter. Immediate steps were taken to secure other counsel for Sauter, and W. M. Potts of Mobridge and P. O. Urban of Timber Lake were called into the case to act as attorneys for Sauter. Skaug and Burns continued to act for the Pfaffs. Sauter then moved that as to him the case be dismissed. This motion was denied. He then moved for a separate trial, which motion was also denied. The trial then proceeded with the result that Sauter and John Pfaff were convicted of manslaughter in the first degree, and Katie Pfaff was acquitted. Sauter's motion for a new trial was denied, and he alone brings the case here on appeal.

As it appears from the record, the facts relative to the crime charged necessary to understand the questions of law presented by appellant are about as follows: Appellant and family and the Pfaff family were neighboring farmers in Dewey county. Robert Dupree and Douglas Dupree were Indians, each of whom had a family and lived on a farm in the same neighborhood with the defendants. On the evening of January 5, 1922, appellant, with Robert and Douglas Dupree, went to the home of the Pfaffs. There is a dispute as to whether they had been invited by Pfaff,

but they were all on friendly terms with each other, and were made welcome at Pfaff's. They had a quantity of "moonshine" whisky. Whether appellant took the whisky there with him or Pfaff furnished it is in dispute; but how it came there is not material. Appellant and the two Indians drank freely of the whisky. Pfaff claimed that he did not drink any, and in this he is corroborated by the testimony of his wife. Appellant claims Pfaff drank as freely as the others, and what followed indicates that the four men soon became more or less intoxicated, and soon engaged in a drunken brawl. The testimony of all the defendants is to the effect that the Indians started the fight, if it could be called a fight. After struggling about on the floor for some time, appellant and John Pfaff succeeded in getting the Indians out of the house. The fight continued some little time longer, and then what happened is in dispute. Appellant testified that Pfaff seized an ax that was lying near by and chopped or beat the Indians on the head until they were rendered insensible; then went into the house; got a shotgun; and fired one or more charges of shot into the body of each of them. Pfaff testified that it was appellant who got the gun and shot the Indians and then beat them on the head with the ax. Katie Pfaff testified that it was appellant who came in and got the gun, but she did not see who did the shooting or who used the ax, and who of these witnesses, if either, were telling the truth, there is nothing upon which to base a guess. After a lengthy consideration as to what disposition should be made of the bodies of the Indians they were loaded into appellant's sled and taken to an abandoned farm in the neighborhood and thrown into an old well. Pfaff testified that it was appellant who hauled the bodies away from his place; that he, Pfaff, did not go along and did not see where appellant put the bodies. Appellant testified that Pfaff went with him, and that they were together when they threw the dead Indians into the well. We believe that the evidence, independent of the testimony of either of the defendants, proves to an absolute certainty that appellant and John Pfaff were together when the bodies were thrown into the well.

During the day and night following the homicide defendants came to the conclusion that the affair must be reported to the peace officers of the county, but that, instead of reporting the facts relative to the occurrence, they would report that the Indians came

to the house when Katie Pfaff was alone with her children and assaulted her, and that she killed them in her own defense. They figured out to their own satisfaction that in case of a trial for the homicide a jury would not convict a woman under the circumstances to be shown by their explanation.

Pursuant to the above plan all of the defendants went to Isabel on the second day after the tragedy and gave the report as agreed upon. All three were arrested on a charge of murder. A preliminary examination was had. They testified as agreed upon, but all were held for trial, and an information was filed charging them all with the murder of Robert Dupree. They stuck to the story as agreed upon until the time of the trial, and went into the trial on the theory that it was Katie Pfaff alone who did the killing, but differences arose between them after the trial had been in progress a day or two. The Pfaffs decided to save their own skins if they could by testifying that it was appellant who did the killing and who disposed of the bodies, and that they, the Pfaffs, took no part whatever in the commission of the offense. It was this circumstance that necessitated the withdrawal of Skaug and Burns as attorneys for appellant and the calling of Potts and Urban into the case.

Over the protest of appellant the court continued with the trial of the case almost immediately after the arrival of Mr. Potts, and it is the contention of appellant that he was prevented from having a fair trial by refusing to allow his counsel more time for preparation. Error is also predicated upon the refusal of the court to dismiss the case as to appellant, and upon denying him a separate trial.

[1-3] The situation presented by the change of counsel during the progress of the trial was most unusual, but it did not as a matter of right entitle appellant to a dismissal or to a separate trial. He was entitled, as a matter of right, to a reasonable time to make preparation for the trial, and it is not claimed that sufficient time for that purpose had not been allowed before the commencement of the trial. But this was the extent of his absolute right. When new counsel were called in they were entitled to only so much time as was necessary to enable them to proceed intelligently with the trial. In this matter the trial court was

vested with a wide discretion, and, in the absence of abuse of such discretion, we have no right to interfere. While we do not think the trial judge was as liberal in this matter as the circumstances would have warranted, we are unable to find wherein the appellant was prejudiced by the action of the court. Counsel have not pointed out what other or different course they could have pursued had more time been allowed them for preparation or what different steps they could or would have taken for the protection of appellant's rights. Appellant is not entitled to a new trial on this ground.

[4] There was no error in refusing appellant a separate trial. He was entitled, as a matter of right, to a separate trial had he requested it at the time provided for that purpose, but, having failed to avail himself of this right at the proper time, he waived it, and cannot now complain because a separate trial was denied him. It must be borne in mind that the unfavorable situation in which appellant found himself in the middle of the trial was the result of his own conduct. Had he told the truth in the first place, as he claims he finally did at the trial, it is altogether likely that he would have procured different counsel before the trial commenced, and he certainly would never have gone to trial with the Pfaffs.

[5] Appellant urges the insufficiency of the evidence to support the verdict. In support of this contention it is claimed by appellant that "there is no legal testimony in the record that connects or tends to connect the defendant Sauter with the offense charged." This statement is not borne out by the record. Pfaff testified that he saw Sauter shoot both of the Indians, and Katie Pfaff testified that it was Sauter who came in the house and got the gun. This testimony was competent, and, if the jury believed it, it is sufficient to support the verdict. It must be conceded, however, that the evidence in this respect is very unsatisfactory. These two witnesses admitted that they had testified falsely at the trial as to the disposal of the bodies of the Indians after they had been killed. Moreover, their disposition to testify falsely, and their interest in the result, was such as to prompt them to testify to anything that would save them from conviction. But for us to say that they were unworthy of belief would be a clear usurpation of the province of the jury.

[6]    Appellant asks for a new trial on the ground of newly discovered evidence.   The matters constituting newly discovered evidence are set out in two affidavits, and are to the effect that since the trial the defendant John Pfaff has made the statement that appellant is innocent of the killing of the said Indians, and the testimony of said Pfaff to the effect that he did not assist appellant in the disposal of the said bodies was false; that Katie Pfaff has stated that her testimony, wherein she testified that it was appellant who came into the house and got the gun with which the Indians were killed, and that John Pfaff did not go with appellant when the dead bodies were taken from the Pfaff home, was false.   But neither Katie Pfaff or John Pfaff would make an affidavit to this effect, nor promise to so testify in case a new trial were granted.   This showing does not bring appellant within the rule of allowing a new trial on the ground of newly discovered evidence.   There is no assurance whatever that the testimony of either of the Pfaffs would be different from what it was at the first trial.

[7]    At the trial, and over proper objection by appellant, the court permitted the reporter who took the testimony at the preliminary hearing to read the testimony given by John Pfaff and Katie Pfaff at such hearing.   From the standpoint of the prosecution we are wholly at a loss to understand why this testimony was offered.   It had been put in at the preliminary hearing for the purpose of showing that it was Katie Pfaff who did the killing and that she did it in self-defense.   If the testimony had been true, it would not have tended in any manner to have convicted either of the defendants.   It not only did not prejudice the rights of appellant in any manner, but tended to exonerate him from all responsibility for the killing.   After this testimony was admitted, the theory of the defense was changed, and it is conceded by all parties to the action before the close of the trial that such testimony was wholly false, and therefore could not have had any weight with the jury one way or the other.

[8]    The offense involved in this case was committed on an unpatented homestead claim situated within the boundary lines of what originally constituted the Cheyenne Indian Reservation, and for that reason appellant contends that the courts of this state do not have jurisdiction of said offense.   This contention is based

upon the following provisions of section 329, U. S. Cr. Code (U. S. Comp. St. § 10503):

"The Circuit and District Courts of the United States for the District of South Dakota shall have jurisdiction to hear, try, and determine all actions and proceedings in which any person shall be charged with the crime of murder, manslaughter, rape, assault with intent to kill, assault with a dangerous weapon, arson, burglary, or larceny, committed within the limits of any Indian reservation in the state of South Dakota."

This law was enacted in 1903, and no doubt would govern this case had the reservation remained the same as it was then, but in 1908 a law (chapter 218, 35 St. at Large 460) was enacted changing the boundary of the Cheyenne Indian Reservation whereby the territory in which this offense was committed was excluded from the reservation. This brings the case squarely within what is said in United States v. La Plant (D. C.), 200 F. 92, and for the reasons stated in that case we hold that the state courts have jurisdiction of this case.

A number of assignments are predicated on the giving and refusal to give certain instructions to the jury, but no mention of them is made in the argument, and they will be deemed to have been abandoned by the appellant.

While, as said by appellant, the situation presented by this record is a most unusual one, we are satisfied that appellant had a fair trial, and that there is sufficient competent evidence in the record to support the verdict.

The judgment and order appealed from are affirmed.

CAMPBELL, J., disqualified and not sitting.

Note.—Reported in 205 N. W. 25. See, Headnote (1), American Key-Numbered Digest, Criminal Law, Key-Nos. 622(1), 641(6), 16 C. J. Sec. 2008 (Anno.); (2) Criminal Law, Key-No. 649(4), 16 C. J. Sec. 2087; (3) Criminal Law, Key-No. 577, 16 C. J. Sec. 815, 17 C. J. Sec. 3579; (4) Criminal Law, Key-No. 622(5), 16 C. J. Sec. 2013; (5) Criminal Law, Key-No. 508(9), 16 C. J. Sec. 1423; (6) Criminal Law, Key-No. 958(4), 16 C. J. Secs. 2745, 2746 (Anno.); (7) Criminal Law, Key-No. 1169(7), 17 C. J. Secs. 3662, 3726; (8) Indians, Key-No. 38(2), 31 C. J. Sec. 130 (Anno.)