**KILLS PLENTY et al. v. UNITED STATES.**

No. 12454.

Circuit Court of Appeals, Eighth Circuit.

Feb. 15, 1943.

Thomas L. St. Germain, of Lac Du Flambeau, Wis., and Michael E. Nolan, of Milwaukee, Wis., for appellants.

George Philip, U. S. Atty., of Rapid City, S. D. (John T. Heffron, Asst. U. S. Atty., of Deadwood, S. D., and Leo P. Flynn, Asst. U. S. Atty., of Sioux Falls, S. D., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The sole question for decision is whether the United States District Court for the District of South Dakota had jurisdiction to try the appellants, who are Rosebud Sioux Indians, upon an indictment charging them with the larceny of an automobile "on or about the thirtieth day of May, 1942, on, and within the boundaries of the Rosebud Indian Reservation, in the County of Todd, in the Western Division of the District of South Dakota, and in and upon the townsite of Mission, the Indian title to which townsite had been extinguished prior to the thirtieth day of May, 1942." The appellants demurred to the indictment on the ground that the court lacked jurisdiction to try them for larceny committed within the limits of the reservation on lands the Indian title to which had been extinguished. The demurrer was overruled and the appellants entered pleas of not guilty. They waived trial by jury, and were tried by the court. The evidence showed, as the indictment had alleged, that the crime was committed by the appellants within the reservation, but not on Indian lands. Over the objections and exceptions of the appellants to the jurisdiction of the court, a judgment of conviction was entered, and they were placed on probation. This appeal is from the judgment.

Jurisdiction is based upon § 549, Title 18 U.S.C.A., § 329 Criminal Code, which provides: "The district courts [court] of the United States for the district of South Dakota shall have jurisdiction to hear, try, and determine all actions and proceedings in which any person shall be charged with the crime of murder, manslaughter, rape, assault with intent to kill, assault with a dangerous weapon, arson, burglary, or larceny, committed within the limits of any Indian reservation in the State of South Dakota. * * *"

It is contended by the appellants that the words "within the limits of any Indian reservation" should be construed as though they read, "within the limits of any Indian reservation upon lands therein the Indian title to which has not been extinguished." We think that Congress did not intend that any such limitation should be read into this statute. The statute, in effect, represents a compact between the State of South Dakota and the United States whereby the United States agreed to prosecute in the United States District Court for the District of South Dakota persons charged with certain major crimes committed within the boundaries of the Indian reservations in that State. This arrangement has been in effect for about forty years, and the practical construction placed upon it by the State and by the federal government is that the federal government shall have jurisdiction to prosecute in federal court persons charged with the crimes specified in § 549 if committed within the territorial limits of an Indian reservation in South Dakota, regardless of the ownership of the lands upon which the crimes were committed.

In 1901 the Legislature of South Dakota enacted Chap. 106, Laws of South Dakota 1901, providing as follows:

"Sec. 1. There is hereby relinquished and given to the United States of America and the officers and courts thereof exclusive jurisdiction and authority to ar-

rest, prosecute, convict and punish all persons whomsoever who shall, upon any Indian reservation within the state of South Dakota, commit any act in violation of the penal laws of the United States.

"Sec. 2. No costs or charges incurred in the courts of the United States in the prosecution of offenses committed upon any Indian reservation shall be chargeable to the state of South Dakota.

"Sec. 3. This act shall be in full force and effect whenever the jurisdiction hereby relinquished shall be assumed by the United States.

"Sec. 4. All acts and parts of acts in conflict with the provisions of this act are hereby repealed."

By an Act approved February 2, 1903, Chap. 351, 32 Stat. 793, 18 U.S.C.A. § 549, Congress provided that the courts of the United States for the district of South Dakota "are hereby given jurisdiction to hear, try, and determine all actions and proceedings in which any person shall be charged with the crime of murder, manslaughter, rape, assault with intent to kill, arson, burglary, larceny, or assault with a dangerous weapon committed within the limits of any Indian reservation in the State of South Dakota." The Act expressly stated that it was "passed in pursuance of the cession of jurisdiction contained in chapter one hundred and five [106], Laws of South Dakota, nineteen hundred and one." The Act of February 2, 1903, later became § 329 of Chap. 321 of the Act of March 4, 1909, 35 Stat. 1151, and is now § 549, Title 18 U.S.C.A. (See historical note following § 549.)

■ The validity of the arrangement between the State of South Dakota and the United States whereby the State ceded, and the United States assumed, jurisdiction over certain crimes committed on Indian reservations in the State, was sustained by this court in Hollister v. United States, 8 Cir., 145 F. 773, decided in 1906. In 1911, it was ruled in the case of United States v. La Plant, D.C.S.D., 200 F. 92, that the federal court was without jurisdiction of the crime of murder committed on lands which were originally within the boundaries of the Cheyenne River Indian reservation but were excluded from the reservation by the Act of May 29, 1908, Chap. 218, 35 Stat. 460, diminishing the reservation. Compare: State v. Sauter, 48 S.D. 409, 205 N.W. 25.

In United States v. Frank Black Spotted Horse, D.C.S.D., 282 F. 349, decided in 1922, Judge Elliott, who was then United States District Judge for the District of South Dakota, considered the question with which we are now concerned, and ruled that the State of South Dakota intended to cede, and the United States intended to assume, jurisdiction of major offenses committed within the boundaries of the Rosebud Indian Reservation, notwithstanding the extinguishment of the government's title to particular tracts within the reservation. Judge Elliott pointed out that at the time jurisdiction of such offenses was ceded to and assumed by the United States there were within the limits of the reservation isolated tracts the government's title to which had already been extinguished.

In Hatten v. Hudspeth, Warden, 10 Cir., 99 F.2d 501, 503, Hatten, who was confined in the United States Penitentiary at Leavenworth under sentence for murder alleged to have been committed within the limits of the Rosebud Indian Reservation, in the State of South Dakota, sought release on habeas corpus on the ground that the United States District Court for the District of South Dakota had no jurisdiction to impose the sentence, because the place where the murder was alleged to have been committed was on patented lands. The United States Circuit Court of Appeals for the Tenth Circuit ruled, (1) that it did not affirmatively appear from the face of the indictment that the trial court lacked jurisdiction of the offense, so as to render the sentence void on collateral attack; and (2) that that court "under this appeal as to a writ of habeas corpus had exclusive jurisdiction over said crime of murder committed within the limits of said Rosebud Indian Reservation." While, as the appellants contend, the Hatten case is not strictly comparable with this case, the opinion in the Hatten case refers to the case of United States v. Frank Black Spotted Horse, supra, D.C.S.D., 282 F. 349, and indicates that it was relied upon. In no case has it been held that § 549, Tit. 18 U.S.C.A., does not apply to crimes committed, within the territorial limits of an Indian reservation in South Dakota, on lands the Indian title to which has been extinguished.

In State v. Johnson, 212 Wis. 301, 249 N.W. 284, relied upon by the appellants, the Supreme Court of Wisconsin held

that a state court of Wisconsin had jurisdiction to try a tribal Indian for manslaughter committed on patented lands within the boundaries of the Bad River Indian Reservation, since, under § 548, Tit. 18 U.S.C.A.,[1]—which gave to the United States exclusive jurisdiction over certain crimes, including manslaughter and larceny, committed by an Indian within the boundaries of any state and "within the limits of any Indian reservation,"—patented lands within the reservation boundaries were not to be regarded as being within the limits of the reservation. In its opinion the Supreme Court of Wisconsin referred to the case of United States v. Frank Black Spotted Horse, supra, D.C. S.D., 282 F. 349, as being contrary to the weight of authority, apparently not fully realizing that the Spotted Horse case dealt with a different statute and one which related solely to South Dakota and represented an assumption by the United States of jurisdiction ceded by that State.

It can, of course, be argued that the words "within the limits of any Indian reservation" should mean the same thing in any statute, but the argument, we think, is unsound. In § 549, Tit. 18 U.S.C.A., those words mean what Congress intended them to mean. To find that meaning the words must be viewed in their setting, and the history and purpose of the Act must be considered. United States v. American Trucking Ass'ns, 310 U.S. 534, 542–544, 60 S.Ct. 1059, 84 L.Ed. 1345. The long accepted interpretation of the words "within the limits of any Indian reservation" as used in § 549, Tit. 18 U.S.C.A., the statute with which we are concerned, should not now be disturbed by this court. We think that, unquestionably, it was the intention of the State of South Dakota, in 1901, to cede to the United States jurisdiction to deal with certain criminal offenses committed within the territorial limits of the Indian reservations in that State so long as they remained Indian reservations, and that it was the intention of the United States, in 1903 and thereafter, to assume and exercise that jurisdiction with respect to the crimes enumerated in § 549, Tit. 18 U.S.C.A. We regard the contention that the State of South Dakota was without authority to cede such jurisdiction to the United States with respect to patented lands within the limits of Indian reservations as without merit.

It would serve no useful purpose to discuss § 548, Tit. 18 U.S.C.A., or the cases interpreting that statute, since the jurisdiction of the trial court in this case was based solely upon § 549.

If the appellants, who are poor persons, desire to apply to the Supreme Court of the United States for certiorari, they may do so without the payment of Clerk's fees or costs in this court.

The judgment appealed from is affirmed.

---

[1] The reference is to § 548, Tit. 18 U.S.C.A. as it was prior to the amendment of June 28, 1932, c. 284, 47 Stat. 336–337.