STATE, Appellant v. MOLASH, Respondent

(199 N.W.2d 591)

(File No. 10959. Opinion filed July 19, 1972)

Order denying petition for rehearing 9-6-72

**Gordon Mydland,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, **Robert L. Tschetter,** State's Atty., McIntosh, for plaintiff and appellant.

**Curtis W. Hanks,** Lemmon, **Marvin J. Sonosky,** Washington, D. C., for defendant and respondent.

DOYLE, Judge.

This is an appeal by the plaintiff, State of South Dakota, from an order of the Circuit Court for the Eighth Judicial Circuit granting defendant's motion to dismiss for lack of jurisdiction.

The defendant Joe Molash, a member of the Standing Rock Sioux Tribe, was charged with the commission of the crime of forgery on deeded or fee land in the City of McLaughlin, Corson County, South Dakota. The defendant's motion to dismiss alleged the state to be without jurisdiction, in that the offense by an Indian took place in Indian country. The trial court granted the motion holding the state to be without authority to prosecute the defendant, as the City of McLaughlin, Corson County, South Dakota, is a part of the Standing Rock Indian Reservation and, as such, beyond the jurisdiction of the courts of the State of South Dakota. We affirm.

This opinion requires a brief review of the history of the Standing Rock Reservation. By the treaty of April 29, 1868, 15 Stat. 635, the land west of the Missouri River in South Dakota and a small part of North Dakota was set aside as the Great Sioux Reservation for the Sioux Nation. In 1877 the United States acquired a portion thereof and established the acquired land as a part of the public domain. Act of February 28, 1877, Ch. 72, 19 Stat. 254. Six reservations were then created from the remaining Great Sioux Nation, one of which was the Standing Rock Reservation wherein the alleged offense in this action occurred. Act of March 2, 1889, 25 Stat. 888. During the years 1904 through 1913 Congress enacted a series of statutes relating to the tribal lands in five of the six reservations. The Act of February 14, 1913, Ch. 54, 37 Stat. 675 (Act of 1913), dealt with that part of the reservation embracing McLaughlin, South Dakota, the situs of the alleged offense in this case.

Congress in the Act of 1913 in summary provided: (1) For allotments to each Indian who had not been previously allotted, (2) For withholding lands for agency Indian schools and various religious institutions, (3) For the grant of sections 16 and 36 in each township to the state for school purposes or providing lieu lands in the event these sections had been previously allotted, and (4) For the remaining "surplus" lands to be sold under the Homestead and Townsite laws for not less than the price fixed in the Act.

The Act further provided the sale price was to be held in trust by the United States and the proceeds credited to the trust account of the tribe. Section 10 of the Act spelled out that the United States was not bound to purchase any land or to find purchasers therefor (except school lands heretofore referred to), and also stated:

"Provided, That nothing in this Act shall be construed to deprive the said Indians of the Standing Rock Indian Reservation of any benefits to which they are entitled under existing treaties or agreements not inconsistent with the provisions of this Act."

██ Once Congress has established a reservation it remains so until separated therefrom by Congress. United States v. Celestine, 215 U.S. 278, 30 S.Ct. 93, 54 L.Ed. 195. The State contends that Congress has disestablished that part of the reservation embracing McLaughlin by the sale of surplus unallotted lands under the Act of 1913 with the proceeds of disposition to the public treasury. Seymour v. Superintendent of Washington State Penitentiary, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346. The Act of 1913 was not an outright sale of surplus lands by the tribe to the United States. It merely provided that the United States, acting as trustee, could sell tribal lands with the proceeds of the sale credited to the tribe.

In Seymour v. Superintendent of Washington State Penitentiary, supra, dealing with the Colville Indian Reservation in the State of Washington, and the Act of 1906, 34 Stat. 80 (Act of 1906), which is an Act similar to the Act of 1913, the United States Supreme Court speaking through Justice Black stated:

"it seems clear that the purpose of the 1906 Act was neither to destroy the existence of the diminished Colville Indian Reservation nor to lessen federal responsibility for and jurisdiction over the Indians having tribal rights on that reservation. The Act did no more than open the way for non-Indian settlers to own land on the reservation in a manner which the Federal Government, acting as guardian and trustee for the Indians, regarded as beneficial to the development of its wards."

In Seymour, as here, the Act set forth the fact that the United States acted as trustee in behalf of the Indians, and did nothing more than act as such in selling the unalloted property in accordance with the Act and crediting the proceeds of the sale to the tribe.

In a recent case involving the Fort Berthold Indian Reservation in North Dakota and the Act of June 1, 1910, 36 Stat. 455 (Act of 1910), the court in construing a similar "surplus" land statute held that the Act of 1910 did not alter or change the boundaries of the Fort Berthold Indian Reservation. The City of New Town,

North Dakota v. United States, 8 Cir., 454 F.2d 121. Thus, in both Seymour and New Town, it has been held that a reservation has not been disestablished under acts similar to the Act of 1913.

■ ■ The term "Indian country" has been defined by Congress as "all land within the limits of any Indian reservation under the jurisdiction of the United States notwithstanding the issuance of any patent, etc." Act of June 25, 1948, 62 Stat. § 1151 at p. 757, 18 U.S.C. § 1151, as amended. It is established that state jurisdiction does not extend to Indians in Indian country, Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251, and in Smith v. Temple, 82 S.D. 650, 152 N.W.2d 547, and cases cited therein, we recognized the following rules and principles:

"1. The disclaimer of jurisdiction contained in our Enabling Act and Constitution deprives our state of criminal jurisdiction over Indians and Indian territory:

"2. Public Law 280 (Chapter 505, 62 Stat. 588) is not a present grant of jurisdiction and this state has not effectively, affirmatively, and unequivocally acted to assume jurisdiction in the manner specified in such Act," (Chapter 467 of the Laws of 1963 was a statutory effort by the state to comply with Public Law 280 which was referred to and rejected by the electorate of the State of South Dakota in 1964) therefore,

"3. Criminal jurisdiction over Indians for crimes committed within Indian territory in South Dakota is exclusively vested in the Federal and Tribal courts."

We conclude that the Act of 1913 did not disestablish that part of the Standing Rock Indian Reservation embracing the City of McLaughlin, South Dakota, and that the trial court correctly concluded that the state is without jurisdiction over the defendant for the offense charged.

Affirmed.

All the Judges concur.

BIEGELMEIER, Judge (concurring).

In United States v. La Plant, 200 F. 92 (D.C.S.D.1911), Judge Willard wrote:

"The question here concerns the relative jurisdiction of the state courts and the federal courts. It is important to definitely know over what land the state courts have jurisdiction and over what land the federal courts have jurisdiction * * * * ".

Defendant's brief states that by reason of Seymour v. Superintendent etc., 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346, the La Plant case has been seriously questioned, if not overruled by Putnam v. United States, 8 Cir., 1957, 248 F.2d 292. See also United States ex rel. Miner v. Erickson, 8 Cir., 1970, 428 F.2d 623, Judge Lay dissenting, and The City of New Town, North Dakota v. United States, 8 Cir., 1972, 454 F.2d 121. La Plant was relied on by this court in State v. Sauter, 48 S.D. 409, 205 N.W. 25, and cited in Lafferty v. State, 80 S.D. 411, 125 N.W.2d 171, and State v. Barnes, 81 S.D. 511, 137 N.W.2d 683. These and other opinions of this court may be subject to the same uncertainty as to what part of original reservations remains as Indian country. 18 U.S.C. § 1151.

The construction of federal statutes is clearly within the province of the United States Supreme Court as the final arbiter, and in view of the importance of the question involved and the fact that on March 14, 1972, a petition for certiorari was filed in that court to review the Arnett v. 5 Gill Nets, 20 Cal.App.3d 729, 97 Cal.Rptr. 894, opinion (sub nomine, Mattz v. Arnett, 71-1182, 40 U.S. Law Week 3494), it may be in the public interest that the Attorney General will file a similar petition as to this decision.

WOLLMAN, J., concurs in the above.

DOYLE, J., concurs in the certiorari suggestion.