STATE ex rel. OĹSON, Appellant v. SHOEMAKER,
Respondent

Original Proceeding

(39 N. W.2d 524)

(File No. 9099. Opinion filed October 27, 1949)

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Petitioner Edwin Olson.

**Sigurd Anderson,** Atty. Gen., **E. D. Barron,** Asst. Atty. Gen., **D. G. Grieves,** State's Atty., Tripp County, Winner, for Repsondent James F. Shoemaker as Sheriff of Tripp County, S. D.

SMITH, P.J. By his petition for writ of habeas corpus, Edwin Olson questions the jurisdiction of the state of South Dakota and of her courts to deal with the offense of murder of a non-Indian by a non-Indian committed in Todd County, within the limits of the Rosebud Indian Reservation. This contention rests upon a background of legislation and judicial interpretation.

By Sec. 5339, Revised Statutes, it was provided that "Every person who commits murder * * * or in any other place or district of country under the exclusive jurisdiction of the United States * * * shall suffer death."

By Sec. 2145, Revised Statutes, it was provided that "Except as to crimes the punishment of which is expressly provided for in this Title, the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country."

Although the words "Indian Country" employed in Sec. 2145, supra, have been held to include an Indian reservation, it is settled, absent a limiting treaty or congressional act, that notwithstanding the foregoing statutes, a state has jurisdiction of criminal offenses committed by non-Indians against non-Indians on an Indian reservation within the limits of the state. United States v. McBratney, 104 U.S. 621, 26 L.Ed. 869; Draper v. United States, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419; Donnelly v. United States,

228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820, Ann.Cas.1913E, 710; and New York ex rel. Ray v. Martin, 326 U.S. 496, 66 S.Ct. 307; 90 L.Ed, 261. It is not asserted that the jurisdiction of South Dakota over the Rosebud Reservation, is limited by a treaty with the Indians.

However, the legislature of South Dakota enacted Ch. 106, Laws of 1901, including the following sections:

"Sec. 1. Jurisdiction given to the United States. There is hereby relinquished and given to the United States of America and the officers and courts thereof exclusive jurisdiction and authority to arrest, prosecute, convict and punish all persons whomsoever who shall, upon any Indian reservation within the state of South Dakota, commit any act in violation of the penal laws of the United States."

"Sec. 3. To Take Effect.—When. This act shall be in full force and effect whenever the jurisdiction hereby relinquished shall be assumed by the Unied States."

Thereafter on February 2, 1903, Ch. 351, 32 Stat. 793, the Congress enacted the following:

"Sec. 1. That the circuit and district courts of the United States for the district of South Dakota are hereby given jurisdiction to hear, try, and determine all actions and proceedings in which any person shall be charged with the crime of murder, manslaughter, rape, assault with intent to kill, arson, burglary, larceny, or assault with a dangerous weapon committed within the limits of any Indian reservation in the State of South Dakota.

"Sec. 2. That any person convicted of the crime of murder, manslaughter, rape, arson, or burglary committed within the limits specified in section one of this Act shall be subject to the same penalties and punishment as are all other persons convicted of the commission of any of said crimes within the sole and exclusive jurisdiction of the United States: Provided, however, That any Indian who shall commit the crime of rape within the limits of any Indian reservation mentioned in this Act shall be punished by imprisonment at the discretion of the court.

"Sec. 3. That any person convicted of the crime of assault with intent to kill, assault with a dangerous weapon,

or larceny, committed within the limits specified in section one of this Act shall be subject to the same penalties and punishment as are all other persons convicted of either of said crimes under the laws of the State of South Dakota.

"Sec. 4. That this Act is passed in pursuance of the cession of jurisdiction contained in chapter one hundred and five, Laws of South Dakota, nineteen hundred and one."

(The error in the number of the chapter was subsequently corrected. Ch. 321, 35 Stat. 1151, § 329. Ultimately the act became 18 U.S.C.A. § 549.)

That these quoted statutes were effective to vest the United States with the power to deal with the offenses described in the Act of Congress quoted supra was held in Kills Plenty v. United States, 8 Cir., 133 F.2d 292, certiorari denied 319 U.S. 759, 63 S.Ct. 1172, 87 L.Ed. 1711, and was assumed in State v. Sauter, 48 S.D. 409, 205 N.W. 25. In Kills Plenty v. United States, supra, it was written: [133 F.2d 293] "The statute, in effect, represents a compact between the State of South Dakota and the United States whereby the United States agreed to prosecute in the United States District Court for the District of South Dakota persons charged with certain major crimes committed within the boundaries of the Indian reservations in that State. This arrangement has been in effect for about forty years, and the practical construction placed upon it by the State and by the federal government is that the federal government shall have jurisdiction to prosecute in federal court persons charged with the crimes specified in § 549 if committed within the territorial limits of an Indian reservation in South Dakota, regardless of the ownership of the lands upon which the crimes were committed."

The revision of the federal statutes on crimes and criminal procedure appearing in the new Title 18, United States Code Annotated, became effective September 1, 1948. In this revision new § 1153 contains all that the revision preserved of the Act of February 2, 1903, quoted supra. The pertinent portions of that section read as follows: "Any Indian who commits against the person or property of another Indian or other person any of the following offenses,

namely, murder, manslaughter, rape, incest, assault with intent to kill, assault with a dangerous weapon, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

It will be noted that whereas the original act dealt with offenses committed by "any person" the revision limits the application of the section to "any Indian", and that the new statute omits the original provision vesting jurisdiction in the United States courts for the district of South Dakota, and transforms the former special statute into one of general application throughout the Indian country. Old 18 U. S.C.A. § 549 was repealed. Cf. page 2415, New Title 18, U.S.C.[1]

The reviser's note, page 2548,[1] includes the following:

"Section 549 of title 18 U.S.C., 1940 ed., conferred special jurisdiction on the United States District Court for South Dakota of all crimes of murder, manslaughter, rape, assault with intent to kill, assault with a dangerous weapon, arson, burglary, and larceny committed within the limits of any Indian reservation within the State, whether by or against Indians or non-Indians. The Act of February 2, 1903, 32 Stat. 793, from which said section 549 was derived, accepted the cession by South Dakota of such jurisdiction.

"The effect of revised sections 1151, 1152, and 1153 of this title is to deprive the United States District Court for the District of South Dakota of jurisdiction of offenses on Indian reservations committed by non-Indians against non-Indians and to restore such jurisdiction to the courts of the State of South Dakota as in other States. This reflects the views of the United States attorney, George Philip, of the district of South Dakota."

The petitioner, a non-Indian, is in the custody of the sheriff of Todd County, South Dakota, on a warrant issued by a magistrate on a complaint charging him, under the statutes of South Dakota, with the murder of a non-Indian committed on September 7, 1948 within the limits of the

1. 1948 Special Pamphlet, Revised Title 18, U.S. Code.

Rosebud Indian Reservation in South Dakota. As we have indicated, he questions the jurisdiction of the courts of South Dakota. Deeming the issue to be of extraordinary concern, we have accepted original jurisdiction of his petition for a writ of habeas corpus.

Under the assumption that Ch. 106, Laws of 1901 of South Dakota, and the quoted Act of Congress of February 2, 1903, vested exclusive jurisdiction in the United States to deal with the offense of murder of a non-Indian by a non-Indian on a reservation within the limits of South Dakota, we consider the contentions of the petitioner that (a) the revision of the federal statutes appearing in New Title 18 U.S.C.A., does not relinquish the described jurisdiction to South Dakota, nor even tender such a relinquishment, and (b) a recession by the Congress is ineffective until accepted by South Dakota, and there has been no such acceptance.

In presenting the contention that by the enactment of the revision of Title 18 U.S.C.A., the Congress did not intend to relinquish the limited jurisdiction we are considering, the viewpoint is suggested that the letter and sweep of the revision is broad enough to penalize a non-Indian for murder of a non-Indian on a South Dakota Indian reservation, and to authorize a prosecution therefor in the United States courts.

As a preliminary step in urging this suggested interpretation of the revision, attention is directed to the fact that although new § 1153 omits the provision of old § 549 vesting the United States District Court wth jurisdiction, new § 3231 provides that such court shall have "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." And it is also pointed out that although new § 1153 omits the former provisions for punishment for the commission of the eight enumerated crimes, these are covered by other general provisions, and we are cited to sections 81, 113(c), 661, 1111, 1112, 1113, and 2031 of new U.S.C.A. Title 18.

With this background counsel refers to new § 1152, Title 18 U.C.A. reading as follows: "Except as otherwise expressly provided by law, the general laws of the United

States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, **shall extend to the Indian country.**" (Emphasis supplied.)

We are told that while it is settled by the course of the decisions of the United States Supreme Court extending from United States v. McBratney, supra, to New York ex rel. Ray v. Martin, supra, the foregoing statutory words appearing now in the new § 1152 were not effective to reserve power in the United States to deal with offenses committed by non-Indians against non-Indians on Indian reservations over which a state had acquired jurisdiction, those cases are not necessarily controlling in the circumstances at bar. It is urged that those cases but hold that the words employed in new § 1152 are not sufficient in themselves to extend any of the penal laws of the United States to an Indian reservation with the jurisdiction of a state, but we are told that "As applied to South Dakota Indian reservations, distinguished from reservations elsewhere, and by the state legislation in 1901, and the federal legislation in 1903, the United States had acquired such jurisdiction. Accordingly, and under new Section 1152, the 'general laws of the United States' as to criminal offenses apply."

The foregoing construction advocated by counsel depends solely upon the letter of the revision for its support. The legislative history, the subject matter and the revisor's note induce a firm conviction that the Congress intended by the revision to restore to South Dakota the power it had gained by Ch. 106, Laws of 1901, and the Act of February 2, 1903, and to adopt a uniform policy in dealing with crime throughout the Indian reservations. We deem it our duty to declare the intention so revealed.

Prior to the revision we are considering, the Congress did not employ the provisions now appearing in new § 1152 to extend the penal laws of the United States to offenses by non-Indians against non-Indians committed within the Indian reservations of South Dakota. United States v. McBratney, supra, and New York ex rel. Ray v. Martin, supra. When our state, by Ch. 106, Laws of 1901, tendered the

power to extend all of the penal laws of the United States to the reservations located within our borders, the Congress responded by adopting the special Act of February 2, 1903, to provide for but a limited extension of enumerated penal provisions to those reservations and to clothe the United States Courts sitting in South Dakota with jurisdiction to deal with offenders. Thus it is plain that our problem is to determine whether old § 549 was repealed so as to permit the letter of the several cited pre-existing sections to replace it and take over all of its functions, and thus avoid useless verbage, or because of a change of policy.

■ ■ Obviously, the Congress accepted a jurisdiction to deal with the described crimes involving only non-Indians when committed on our reservations to further its purposes in protecting the Indian wards of the United States. Since that time, with the passing of Indian lands into other hands, and the shifting of Indian population away from the reservations, there has existed increasingly less reason for the retention of that power. Further there is no apparent justification for the continuance of a different policy in dealing with the reservations of South Dakota than is enforced elsewhere. The circumstances invited the Congress to promulgate a uniform policy throughout the Indian country. The revisor's note, which was before the Congress as it adopted the revision, states that it sought "to restore such jurisdiction to the Courts of the State of South Dakota as in other States." As we understand the pronouncements of the authoritative interpreter of these federal statutes this revisor's note is available to us in determining the intention of the Congress. United States et al. v. American Trucking Associations, Inc., et al., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. As we have indicated, we are convinced that it reveals the true intention of Congress.

The foregoing conclusion introduces the principal contention of the petitioner, viz., if it be conceded that the Congress by this revision of its criminal statutes intended to restore the described fragment of political sovereignty to South Dakota, such a restoration has not been accomplish-

ed because South Dakota has not assented to a resumption of that power. The argument, based on the language we have quoted from Kills Plenty v. United States, supra, is that the cession of the described jurisdiction, and the shifting of its incidental heavy burdens was accomplished by a compact between the United States and the state, and a recession can be accomplished only by a like mutual agreement. The relation of the high contracting parties, the temporary federal purpose they sought to further, and the nature of the jurisdiction involved, convince us that a reversion of this power to the state whenever the Congress determined to discontinue its exercise was contemplated, and therefore the contention is untenable.

Reason suggests that complete understanding of the arrangement the United States and South Dakota intended to effect by the quoted enactments supra, will not be gained until the words they used are read in the light of the relationship of the contracting parties, the purpose they intended to serve and the nature of power with which they were dealing.

■ ■ We are not considering the transfer of jurisdiction between independent sovereignties. This is an arrangement between the sovereign components of one country in reference to areas in which they each exercise sovereign powers. The particular power, a police power, is an inherent power of the state. In our scheme of government it is a power which normally is vested in the state, Keller v. United States, 213 U.S. 138, 29 S.Ct. 470, 53 L.Ed. 737, 16 Ann.Cas.1066. In their common interests, but to assist the federal government in responding to its obligation to its Indian wards, the parties sought to invest the United States with a measure of the police power of the state. That the federal program they sought to further was temporary in nature was known to both parties. It has long been common knowledge that the over-all policy of the government looks toward the assimilation of its Indian wards into the body of its citizens. That which has happened and is happening was then anticipated, viz., that the land comprising the reservations would pass from the hands of the Indians, and its population would shift away

from the reservations. In other words, a gradual extinction of the reservation was within the contemplation of the parties. A constant vigilance in the exercise of the power with which they were dealing was essential to the welfare of all those who lived in or near these areas. Neither the Congress nor the legislature would for a moment intend to create a no man's land in which serious crime is unrestrained and offenders cannot be punished. The legislature expressed an intention to avoid such an unpoliced area by Sec. 3 of Ch. 106, Laws of 1901, reading: "This act shall be in full force and effect whenever the jurisdiction hereby relinquished shall be assumed by the United States." These considerations convince us that the Congress and the legislature contemplated but a suspension of the normal inherent powers of the state in these areas so long as the described powers were exercised by the federal government.

A somewhat similar view was expressed by Mr. Justice Field in Fort Leavenworth Railroad Company v. Lowe, 114 U.S. 525 at page 542, 5 S.Ct. 995, 1005, 29 L.Ed. 264, where the power of a state to cede its jurisdiction and legislative power over any of its territory to the federal government was under consideration. After stating he could see no objection to such a cession in furtherance of a federal purpose, he wrote, "It is necessarily temporary, to be exercised only so long as the places continue to be used for the public purposes for which the property was acquired or reserved from sale. When they cease to be thus used, the jurisdiction reverts to the state."

Such a construction was placed upon these very enactments by this court in State v. Sauter, 48 S.D. 409, 205 N. W. 25. The scene of the crime with which Sauter was charged was part of the Cheyenne Reservation in 1903 when Congress accepted the described jurisdiction. But prior to the commission of the crime, that area had been excluded from the reservation by the Act of May 29, 1908. Ch. 218, 35 Stat. 460. Following Hollister v. United States, 8 Cir., 145 F. 773, and United States v. La Plant, D.C., 200 F. 92, this court held that the unilateral act of the federal government in excluding the area in question from the res-

ervation operated to restore the full criminal jurisdiction of the state. Obviously, that conclusion rested upon the assumption that such a reversion was within the original contemplation of the high contracting parties.

■ Being solemnly persuaded that jurisdiction to deal with the offense of which the petitioner stands charged is in the courts of South Dakota, our order will be that his petition for a writ of habeas corpus is denied.

All the Judges concur.