[L. A. No. 29475. In Bank. Feb. 21, 1968.]

OLIS P. VAN ARSDALE, Plaintiff and Appellant, v. JOAN
HOLLINGER et al., Defendants and Respondents.

Rose, Klein & Marias and Robert B. Steinberg for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Victor P. Spero, Deputy City Attorney, Murchison, Cumming, Baker & Velpmen, Howard C. Velpmen, Henry F. Walker, Spray, Gould & Bowers and Bob T. Hight for Defendants and Respondents.

Harry S. Fenton, Robert F. Carlson and Kenneth G. Nellis as Amici Curiae on behalf of Defendants and Respondents.

PETERS, J.—In this action to recover for personal injuries, plaintiff appeals from a judgment in favor of defendants Hollinger and the City of Los Angeles.

Plaintiff's employer, Savala Paving Company, entered into a contract with the City of Los Angeles relating to improvements on Century Boulevard, which has three eastbound lanes. On the morning of the accident, barricades were placed across the two outer lanes, leaving the center lane open for traffic, and smaller barricades were placed along the lane lines. Plaintiff and his foreman first eradicated the line between the center and the northerly lane. At the time of the accident they were eradicating the line between the center lane and the southerly (curb) lane. The foreman was applying tar on the line proceeding easterly, and plaintiff was following in a bent over position with his back toward the traffic and putting sand on the tar.

Defendant Hollinger testified that she drove south on Sepulveda Boulevard, that she turned left (east) into the center lane on Century Boulevard behind a truck, that their speed was 15 to 20 miles per hour, that the truck swerved to the left, that she then saw plaintiff bent over in front of her but was unable to stop, and that she hit him with her right front headlight. Plaintiff also testified that he was bent over at the time of the accident. There is another witness who testified that plaintiff was standing at the lane line at the time of the accident. As a result of the impact, plaintiff was knocked into the air and came to rest about 40 feet from the point of impact.

The investigating officer placed the point of impact at 207 feet east of the intersection of Sepulveda. Other witnesses estimated the distance at from 150 to 190 feet, but all witnesses

agreed that the accident occurred at a point beyond the easternmost of the barricades which had been placed along the lane lines. Along the line where plaintiff was working, those barricades extended approximately 140 feet easterly from Sepulveda. Similar barricades along the line plaintiff had worked earlier in the morning extended 178 feet from the intersection.

In the contract between the city and Savala, the contractor was required to furnish fences, barriers, lights and warning signs as necessary to warn the public of dangerous conditions resulting from the contractor's operations. The contractor was also required to provide flagmen wearing red coats and equipped with a red flag or sign. If the contractor failed to so provide, the city could do so at the contractor's expense. The contractor was also required to furnish safety devices and safeguards to protect the public and workmen from injury, and, in addition to those prescribed by the contract and by law, to provide such further safeguards as would be employed by a diligent and prudent contractor.

At the time of the accident, there was no flagman provided, and plaintiff was wearing a red and black shirt with grey pants and was not wearing a flaming red or orange jacket.

There was a city inspector on duty at all times to see that the work was being performed according to the plans and specifications and to call departures therefrom to the attention of the contractor's foreman. The inspectors understood that they could tell the contractor to correct any dangerous condition due to the lack of proper barricades and could see that such conditions were corrected. The senior inspector said that apart from such duties, he had no right to tell, and did not tell, the Savala employees how ''to do things.''

The inspectors testified that, because busy streets were involved, at least one lane had to be kept open, and that the barricades along the line between the lanes where plaintiff was working extended only 140 feet from the intersection because if extended further they would interfere with traffic turning right. There is also evidence that the city inspectors, in consultation with plaintiff's foreman, had decided how far east of the intersection the lane line should be obliterated, and had led plaintiff, while working, beyond the barricades without warning him of the danger.

In response to special interrogatories, the jury found that the city and defendant Hollinger were not negligent, that

plaintiff was not contributorily negligent and that plaintiff's employer was negligent.

Section 815.4 of the Government Code provides: ''A public entity is liable for injury proximately caused by a tortious act or omission of an independent contractor of the public entity to the same extent that the public entity would be subject to such liability if it were a private person. . . .''[1]

The language of section 815.4 of the Government Code is clear, and the conclusion is inescapable that it requires that we look to the city's undertaking and determine whether a private person engaged in such an undertaking would have been liable for the tortious acts and omissions of an independent contractor.

Section 815.4 of the Government Code was adopted as proposed by the California Law Revision Commission without change. (See 1 Cal. Law Revision Com. Rep. 839.) The commission's comment to the section in its entirety states: ''The California courts have held that public entities—and private persons, too—may at times be liable for the acts of their independent contractors. *Snyder* v. *Southern Cal. Edison Co.*, 44 Cal.2d 793, 285 P.2d 912 (1955) (discussing general rule); *Los Angeles County Flood Control Dist.* v. *Southern Cal. Bldg. & Loan Assn.*, 188 Cal.App.2d 850, 10 Cal.Rptr. 811 (1961). This section retains that liability. Under the terms of this section, though, a public entity cannot be held liable for an independent contractor's act if the entity would have been immune had the act been that of a public employee.''

Reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing the statutes. (See e.g., *United States* v. *National City Lines,* 337 U.S. 78, 80-84 [93 L.Ed. 1226, 1228-1230, 69 S.Ct. 955] ; *United States* ex rel. *Almeida* v. *Baldi,* 195 F.2d 815, 821, fn. 19 [33 A.L.R.2d 1407] ; *Stauffer* v. *Exley,* 184 F.2d 962, 964; *Institute of Living* v. *Town & City of Hartford,* 133 Conn. 258 [50 A.2d 822, 825] ; *Lewis* v. *Smith's Estate,* 130 Ind.App. 390 [162 N.E.2d 457, 458] ; *Harris* v. *Shanahan,* 192 Kan. 629 [390 P.2d 772, 778] ; *State* v. *Johnson,* 273

---

[1]Section 815.4 of the Government Code provides: ''A public entity is liable for injury proximately caused by a tortious act or omission of an independent contractor of the public entity to the same extent that the public entity would be subject to such liability if it were a private person. Nothing in this section subjects a public entity to liability for the act or omission of an independent contractor if the public entity would not have been liable for the injury had the act or omission been that of an employee of the public entity.''

Minn. 394 [141 N.W.2d 517, 520]; *Fifth Ave. Bank* v. *Colgate,* 120 N.Y. 381 [24 N.E. 799, 802, 8 L.R.A. 712]; *State* ex rel. *Olson* v. *Shoemaker,* 73 S.D. 120 [39 N.W.2d 524, 527-528]; 82 C.J.S. 757.) This is particularly true where the statute proposed by the commission is adopted by the Legislature without any change whatsoever and where the commission's comment is brief, because in such a situation there is ordinarily strong reason to believe that the legislators' votes were based in large measure upon the explanation of the commission proposing the bill.

The commission has cited *Snyder* v. *Southern Cal. Edison Co., supra,* 44 Cal.2d 793, as "discussing general rule," and we must look to the case as the point where we must commence our analysis of the liability of a public entity for torts of an independent contractor.[2]

After setting forth the rule that a party is not liable for the torts of an independent contractor and a few of the exceptions, the court in *Snyder* discussed the status of the law in this area:

"The matter is discussed by Harper [Law of Torts (1933)], as follows: '. . . one who employs an independent contractor is, as a general rule, not liable for the misconduct of the latter or of his servants while acting within the scope of the contract. The idea responsible for this general rule of nonliability is the want of control and authority of the employer over the work, and the consequent apparent harshness of a rule which would hold one responsible for the manner of conducting an enterprise over which he wants the authority to direct the operations. Again so far as the activity immediately causing the injury is concerned, it is the contractor rather than the contractee who is the entrepreneur and who should ordinarily carry the risk. . . .

" '[There are] certain exceptions and apparent exceptions which, with increasing tendency, seem likely to overshadow in importance and scope the rule itself. . . . A number of situa-

---

[2]In *Snyder* employees of an independent contractor of defendant Southern California Edison Company were injured when a pole for power lines which was installed by the independent contractor fell. In reversing a judgment for the defendant, the court held that the trial court improperly instructed the jury that the defendant would not be liable for the independent contractor's failure to comply with certain safety rules unless it ordered the independent contractor to violate the rules. The court further held that the trial court in effect should have instructed in accordance with plaintiffs' request that defendant had a duty to comply with the safety rules and that it could not meet this duty merely by contracting with the independent contractor.

tions exist, however, which are actual cases of vicarious liability, that is, liability for the misconduct of the independent contractor and his servants although the contractee has himself been free from personal fault. A number of factors concur to constitute the grounds of policy for such allocation of risk from the immediate to the general entrepreneur. These considerations, in fact, constitute such a powerful argument for the liability of the employer of an independent contractor that it would seem highly desirable for the courts to adopt the rule of liability and confine nonliability to a few exceptional cases. This, the American courts, at least, have not yet done, but there is every reason to believe that sound social policy will induce the courts to make further inroads upon the rule of nonliability in this class of cases.

" 'The first genuine case of liability for misconduct of an independent contractor or his employees is the case of the so-called "nondelegable" duty. Where the law imposes a definite, affirmative duty upon one by reason of his relationship with others, whether as an owner or proprietor of land or chattels or in some other capacity, such persons can not escape liability for a failure to perform the duty thus imposed by entrusting it to an independent contractor. . . . It is immaterial whether the duty thus regarded as "nondelegable" be imposed by statute, charter or by common law. Thus where a railroad company was required by statute to construct fences along its right of way and it employed a contractor to construct the fences, the company was liable for the loss of a cow killed by reason of the contractor's failure to build the fences as required by the statute. The same rule applies to the duty imposed upon railroads to erect gates at crossings, to construct cattle guards, and to maintain crossings in good condition. So, too, the owner of land is liable for the failure of an independent contractor to perform affirmative duties toward invitees and others to whom the occupier is bound to keep his premises in a reasonably safe condition. . . .

" 'Another large group of cases predicate liability on the part of the employer of an independent contractor for the misconduct of the latter in the performance of certain "intrinsically dangerous" work. The policy of allocating to the general entrepreneur the risks incident to his activity is obvious when the activity carries with it extraordinary hazards to third persons. . . . [T]he principle may be generalized that one who employs an independent contractor to perform work which is either extra-hazardous unless special precautions are

taken or which is inherently dangerous in any event is liable for negligence on the part of the independent contractor or his servants in the improper performance of the work or for their negligent failure to take the necessary precautions. This broad principle has been applied not only to excavations on private property, but on the public highway as well, to blasting operations, to the construction of a dam, to the use of fire in clearing land, to the demolition of walls and old buildings, and to several other types of intrinsically dangerous enterprises.

" 'In both of the above types of situation in which the employer of an independent contractor is liable for the negligence of the contractor or his servants, there is the limitation that such liability extends only to negligence in the failing to take the necessary precautions, failing to adopt a reasonably safe method, or in failing to produce a result which it is the duty of the employer-contractee to have attained. Such liability does not ordinarily extend to so-called "collateral" or "casual" negligence on the part of the contractor or his servants in the performance of the operative detail of the work. The negligence for which the employer is liable, as general entrepreneur, must be such as is intimately connected with the work authorized and such as is reasonably likely from its nature. Negligence in the doing of ordinary acts, not necessarily incidental, but only accidentally connected with the work, do not fall within the policy of the law which imposes the extraordinary liability upon the employer.

" 'The distinction between "collateral" or "casual" negligence and negligence of the contractor so intimately connected with the work to be done that the employer-contractee is liable therefor is a shadowy one at best.' (Harper, Law of Torts (1933), § 292.) " (*Snyder* v. *Southern Cal. Edison Co.*, *supra*, 44 Cal.2d 793, 799-801.)

The prophesy of Professor Harper quoted in *Snyder* has come to pass; the exceptions to the general rule of nonliability have continued to be expanded. ■ As pointed out in comment b of section 409 of the Restatement Second of Torts, the exceptions "are so numerous, and they have so far eroded the 'general rule,' that it can now be said to be 'general' only in the sense that it is applied where no good reason is found for departing from it. As was said in *Pacific Fire Ins. Co.* v. *Kenny Boiler & Mfg. Co.*, 201 Minn. 500, 277 N.W. 226 (1937), 'Indeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions.' " (See also Prosser on Torts (3d ed., 1964) p. 481.)

It is clear that the libility of an employer of an independent contractor for the latter's tortious conduct is broad, and it must be assumed that the Legislature was aware of the extent of the liability of employers when, by adopting section 815.4 of the Government Code, it chose with one exception not relevant here to waive the defense of sovereign immunity in cases involving tortious conduct of independent contractors. In these circumstances, a claim that application of the numerous and broad exceptions to the so-called general rule of nonliability will result in great liabilities of public entities for injuries caused by tortious conduct furnishes no basis to depart from those exceptions or to refuse to apply them in the instant case.

There are numerous considerations which have led courts to depart from the rule of nonliability of a private employer for the torts of an independent contractor. Some of the principal ones are that the enterprise, notwithstanding the employment of the independent contractor, remains the employer's because he is the party primarily to be benefited by it, that he selects the contractor, is free to insist upon one who is financially responsible, and to demand indemnity from him, that the insurance necessary to distribute the risk is properly a cost of the employer's business, and that the performance of the duty of care is of great importance to the public. (See Prosser on Torts, *supra,* p. 481; 2 Harper and James, The Law of Torts (1956) p. 1406.)

These considerations are present here, and the instant case comes within at least one of the well-recognized exceptions to the rule of nonliability for the acts of an independent contractor. This exception to the rule of nonliability is for work dangerous in the absence of special precautions. In section 416 of the Restatement Second of Torts, the exception is stated as follows: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

In *Courtell* v. *McEachen,* 51 Cal.2d 448, 456-457 [334 P.2d 870], it was held that section 416 of the original Restatement of Torts was applicable in California. Section 416 in the Restatement Second of Torts differs from the original in that the words "likely to create during its progress a peculiar risk of

physical harm'' were substituted for "necessarily requiring the creation during its progress of a condition involving a peculiar risk of bodily harm.'' The change is immaterial here because the undisputed facts meet either test.

This court has held that employees of an independent contractor come within the word "others" as used in sections 413, 414, and 428 of the Restatement of Torts, which like section 416, set forth rules relating to the liability of one hiring an independent contractor. (*Ferrel* v. *Safway Steel Scaffolds*, 57 Cal.2d 651, 655 [21 Cal.Rptr. 575, 371 P.2d 311]; *Woolen* v. *Aerojet General Corp.*, 57 Cal.2d 407, 410-411 [20 Cal.Rptr. 12, 369 P.2d 708]; *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 232-234 [282 P.2d 69]; *Snyder* v. *Southern Cal. Edison Co.*, supra, 44 Cal.2d 793, 798 et seq.) There is no reason to hold otherwise with respect to section 416. In *Woolen* v. *Aerojet General Corp.*, supra, 57 Cal.2d 407, 411, we disapproved a statement in a Court of Appeal case that the word "others" as used in section 416 of the Restatement of Torts does not include employees of an independent contractor. It has recently been held that section 416 of the Restatement of Torts is applicable in California in an action by an employee of the independent contractor (*McDonald* v. *City of Oakland*, 233 Cal.App.2d 672, 677-678 [43 Cal.Rptr. 799]), and other jurisdictions have extended the liability of one who hires an independent contractor to do dangerous work to the employees of the contractor (see 23 A.L.R. 1084, 1129-1135).

Under the undisputed facts, the conditions precedent to the nondelegable duty imposed by section 416 appear as a matter of law. The undertaking here was to eradicate the markings of the white lines on a busy street while one of the three lanes was kept open to traffic. Absent special precautions to keep the traffic proceeding on the open lane from going into the other lanes, the work was highly dangerous. The necessity for such precautions was inherent in the work and was obvious before the work commenced. The contract of the city provided for special precautions, but under the plain language of section 416 this does not satisfy its duty. The work here is analogous to that considered by the Restatement Second in two of its illustrations to section 416, showing that the section applies to the danger of personal injury due to use of a highway because of failure to barricade highways or to warn motorists of dangerous conditions on or adjoining highways. (See Rest. 2d Torts, § 416, illus. 1, 3.)

For the foregoing reasons it is clear that under the undis-

puted facts the city had a nondelegable duty to exercise due care, that an employee of the independent contractor could recover from the city for breach of that duty, and that the city could not avoid that duty by hiring an independent contractor.

 In the instant case, the trial court, after advising the jury that if the contractor had taken control of the premises the city "would have no obligation toward persons in the position of plaintiff," stated that there was an exception to the rule. The court instructed the jury that one who employs an independent contractor to do work which the employer in the exercise of ordinary care should recognize as necessarily creating, during its progress, conditions containing an unreasonable risk of injury to others, unless special precautions are taken, is liable for injury proximately caused to them by the absence of such precautions," if the employer either fails to provide in the contract that the contractor shall take such precautions, or fails to exercise ordinary care to provide in some other manner for the taking of such precautions."[3] The court then pointed out that the city had provided in its contract with the independent contractor for the taking of certain precautions.

The instruction properly recognizes that liability of the city could be predicated on the ground that the work was dangerous in the absence of special precautions. The latter part of the instruction, when given without qualification in the circumstances of this case, is clearly erroneous, however, because when read with the introductory part of the instruction, it tells the jury that the city's duty in this respect may be satisfied by merely providing in its contract for the special precautions. Under section 416 of the Restatement Second of Torts, as we have seen, the city is liable for the failure of the independent contractor to take special precautions even though it has provided in its contract for the taking of the precautions.

The fact that plaintiff did not request an instruction in the language of section 416 did not justify the court in giving an instruction erroneously limiting the city's duty. Moreover, plaintiff requested general instructions that the city had a duty of due care. Since the nondelegable duty applies as a matter of law, such instructions should have been given, and

---

[3]The instruction is based on section 413 of the original Restatement of Torts.

it was not necessary to instruct on the conditions which give rise to the duty.

In the circumstances of this case, where the jury found that the contractor was negligent, the error in the instructions was prejudicial.

Upon retrial,[4] if the evidence bearing on the issue of duty is unchanged, plaintiff will be entitled to an instruction stating that the city had a nondelegable duty of due care, and for this reason it is unnecessary to determine whether an employee of an independent contractor is among those who can recover for breach of the nondelegable duties set forth in section 417 of the Restatement Second of Torts dealing with work done in a public place and section 418 of the Restatement Second of Torts dealing with the nondelegable duty to maintain public highways or to determine whether section 428 of the Restatement Second of Torts dealing with the nondelegable duty relating to work carried on under public franchise is applicable.[5] (The Restatement recognizes that the exceptions stated therein to the rule of nonliability overlap so that in the ordinary case two or more of the exceptions will be applicable. (See Rest. 2d Torts, Introductory Note to ch. 15, Topic 2.))

The applicability of the duty of care as a matter of law also makes it unnecessary to consider plaintiff's claim that the trial court erred in refusing to instruct the jury on the duty of an invitor and the conditions giving rise to such duty.

Plaintiff also urges that the court erred in refusing to instruct that the city was an employer as a matter of law and that certain sections of the Labor Code establishing safety rules were therefore applicable to it. The court instructed the jury that it was a question of fact whether the city was an em-

---

[4]Although the jury in response to interrogatories found that the independent contractor was negligent, the nature of the negligence was not set forth by the jury in its answers to the interrogatories, and the answers do not show whether the contractor's negligence was the proximate cause of plaintiff's injuries. In these circumstances there is no basis for a reversal with directions. It remains for the jury to determine whether the city breached its duty and, if so, whether such breach was the proximate cause of plaintiff's injuries.

[5]Section 417 of the Restatement Second of Torts provides: ''One who employs an independent contractor to do work in a public place which unless carefully done involves a risk of making the physical condition of the place dangerous for the use of members of the public, is subject to liability for physical harm caused to members of the public by a negligent act or omission of the contractor which makes the physical condition of the place dangerous for their use.''

Section 418 of the Restatement Second of Torts provides: ''(1) One who is under a duty to construct or maintain a highway in reasonably safe condition for the use of the public, and who entrusts its construction, maintenance, or repair to an independent contractor, is subject to

ployer as that term was defined in the Labor Code. The mere right to see that work is satisfactorily completed does not impose upon one hiring an independent contractor the duty to assure that the contractor's work is performed in conformity with all safety provisions. (*Kuntz* v. *Del E. Webb Constr. Co.,* 57 Cal.2d 100, 106-107 [18 Cal.Rptr. 527, 368 P.2d 127].) There was evidence that the city did nothing more than exercise general supervision and control to bring about the satisfactory completion of the project and did not regulate the operative details of the work and, if the jury found that this was all that was done by the city, the Labor Code was not the measure of its responsibility. (*Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d 407, 413.)

■ As to defendant Hollinger, plaintiff argues that the court improperly refused to instruct the jury in the language of section 21703 of the Vehicle Code that a driver of a motor vehicle shall not follow another vehicle more closely than is "reasonable and prudent" under the circumstances. However, other instructions given by the court told the jury that a driver must exercise due care to avoid accidents, must be vigilant, and exercise such control that to avoid a collision he can stop as quickly as might be required by eventualities that would be anticipated by an ordinarily prudent driver. In view of the instructions given, it was unnecessary to instruct in the words of the statute. (Cf. *Tossman* v. *Newman,* 37 Cal.2d 522, 525 [233 P.2d 1] ; *Hughes* v. *MacDonald,* 133 Cal.App.2d 74, 80-81 [283 P.2d 360].)

The judgment is reversed as to defendant City of Los Angeles and affirmed as to defendant Hollinger.

Traynor, C. J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

the same liability for physical harm to persons using the highway while it is held open for travel during such work, caused by the negligent failure of the contractor to make it reasonably safe for travel, as though the employer had retained the work in his own hands.

"(2) The statement in Subsection (1) applies to any place which is maintained by a government for the use of the public, if the government is under the same duty to maintain it in reasonably safe condition as it owes to the public in respect to the condition of its highways."

Section 428 of the Restatement Second of Torts provides: "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted 'y public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

■

BURKE, J.—I concur in the judgment of affirmance as to defendant Hollinger and of reversal as to defendant city. The evidence would support a jury finding that the city had retained some control over the premises where plaintiff's injury occurred. Accordingly, I believe the court erred to plaintiff's prejudice in refusing to give his requested instruction setting forth the liabilities of the city as an invitor in case the jury did so find, and that plaintiff is entitled to a reversal on that ground. (See *Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 232 [4] [282 P.2d 69]; *Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 104 [18 Cal.Rptr. 527, 368 P. 2d 127].)

However, issues relating to the theory of tort liability of one who engages an independent contractor found in section 416, Restatement Second of Torts, are not properly before this court. That section comes into play only if the work involves a peculiar risk of bodily harm. Plaintiff did not request an instruction based on section 416, and in his brief states that during trial he did not contend that the work in which he was engaged created an unreasonable risk of injury. He should not be permitted to raise the point for the first time on appeal.

McComb, J., concurred.