[No. H018483. Sixth Dist. July 15, 1999.]

JACK CATCH, Individually and as Trustee, etc., et al., Plaintiffs and Respondents, v.
ALLAN PHILLIPS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III of the Discussion.

**COUNSEL**

Larry S. Dushkes Law Corporation and Larry S. Dushkes for Defendant and Appellant.

Rutter, Hobbs & Davidoff, Terence S. Nunan, Geoffrey M. Gold; Hoge, Fenton, Jones & Appel, Paul Breen; and Scott M. Tansey for Plaintiffs and Respondents.

## OPINION

**ELIA, J.**—In this case, we consider whether an exercise of a power of appointment was valid even though it was not exercised by will or codicil as required by the terms of the trust. (Prob. Code, §§ 630, 631.)[1] The trial court determined that the exercise was invalid and granted respondent Jack Catch's motion for judgment on the pleadings. Allan Phillips appeals. For reasons we will explain, we affirm.

### Facts and Procedural Background

J. D. Mayer and Esther Catch Mayer established the 1983 Mayer Trust. After J. D. Mayer died in 1992, the trust estate was divided into three separate trusts, known as Trust A, Trust B, and Trust C.

Esther could revoke Trust A during her lifetime. Esther was also granted a general testamentary power of appointment over Trust A. Specifically, the trust provided, "After the death of the surviving Trustor, the Trustee shall distribute all or any part of the balance of Trust A to or for the benefit of such one or more persons or entities, including the estate of the surviving Trustor, on the terms and conditions, either outright or in Trust, *as the surviving Trustor may appoint by a Will or Codicil thereto specifically referring to and exercising power of appointment.*" (Italics added.) If Esther did not exercise her power of appointment, then upon Esther's death, Trust A was distributable to Trust C.

In December 1996, Esther executed five documents. These were (1) a second amendment to the 1983 Mayer Trust appointing appellant Allan Phillips, Esther's nephew, as successor trustee, and ratifying all other aspects of the Mayer Trust; (2) a new will nominating Allan as her executor; (3) two durable power of attorneys, both of which named Allan as her attorney in fact; and (4) an undated and unwitnessed document titled "Exercise of General Testamentary Power of Appointment."

In the appointment document, Esther sought to exercise the power of appointment in favor of her nephew, appellant Allan Phillips. The document provided, in pertinent part, that "After my death, the Trustee shall distribute the balance of Trust A to ALLAN B. PHILLIPS. . . ."[2] It is undisputed that the document was not a will or codicil as required by the Mayer Trust.

---

[1] All further unspecified statutory references are to the Probate Code.

[2] The document provided: "TO THE TRUSTEE OF THE J. D. MAYER AND ESTHER CATCH MAYER REVOCABLE LIVING TRUST dated October 7, 1983, as amended: [¶] I hereby exercise the general testamentary power of appointment over the Survivor's Trust ('Trust A') as provided in Part III, Section 3.03, Paragraph (3) of that certain Trust Agreement of J. D.

In May 1997, Esther died at the age of 80 of liver cancer and metastic brain cancer. If Esther's exercise of the power of appointment was valid, then Allan would receive 100 percent of Trust A. If it was not, then the assets of Trust A would be distributed according to the terms of Trust C. Esther's nieces and nephews, including appellant, each hold a 25 percent share in Trust C.[3] Thus, if the assets of Trust A were distributed according to the terms of Trust C, then the four nieces and nephews would each receive 25 percent of Trust A.

After Esther died, Allan filed a verified petition for instructions in case No. 1-97-PR-139702. A few weeks later, Allan filed a verified petition to ascertain beneficiaries. Allan's petitions sought to determine whether Esther's attempted exercise of her power of appointment was valid even though it was not exercised by will or codicil as required by the terms of the 1983 Mayer Trust.

Respondent Jack Catch is the trustee of Trust C. In August 1997, Catch filed a verified petition for declaratory relief. He also filed a petition for instructions. (§ 21320.) Among other things, Catch sought to oppose Allan's petitions, seek Allan's removal as trustee of Trust A, contest Esther's will, and invalidate the December 1996 amendment to the Mayer Trust. However, Catch first sought to determine whether his actions would constitute a contest under the terms of any "no contest" clause.[4] Bruce Phillips, Jeni Catch, and Neil Catch, who are Esther's other nieces and nephews, joined Catch's petition for declaratory relief.

On December 15, 1997, Judge Alden E. Danner granted Catch's petition in part and denied it in part. Judge Danner decided that Catch's opposition to Allan's petitions was not a contest because the court needed to resolve the uncertainty of whether the power of appointment was exercised. In issuing his ruling, Judge Danner noted that Allan's petitions acknowledged the uncertainty. Judge Danner reasoned that the policy supporting enforcement of no contest clauses—to avoid litigation—could not be promoted by enforcing the no contest clause given the acknowledged uncertainty.

Allan petitioned for a writ of mandate, seeking to overturn the trial court's ruling. We denied the writ, and the California Supreme Court also denied Allan's petition for review.

---

MAYER and ESTHER CATCH MAYER executed October 7, 1983, as amended as follows: [¶] I. After my death, the Trustee shall distribute the balance of Trust A to ALLAN B. PHILLIPS. . . ."

[3]Trust C was to be distributed as follows: Esther's sister, Hannah Phillips, and her brother, Jack Catch (respondent), were to receive 25 percent of the trust's assets. Hannah Phillips' twin sons, Allan (appellant) and Bruce, and Jack's daughter Jeni and son Neil, were to receive 12.5 percent each. Hannah and Jack both filed qualified disclaimers, so Allan, Bruce, Jeni and Neil would receive equal 25 percent shares of Trust C.

[4]Esther's estate plan contained three no contest clauses.

In March 1998, Catch filed a response and objections to Allan's petitions. Catch also filed a motion for judgment on the pleadings. On March 25, 1998, the trial court granted the motion for judgment on the pleadings and dismissed, without leave to amend, Allan's petition to ascertain beneficiaries.[5]

This appeal ensued.

*Discussion*

## I. *Probate Code Sections 630, 631*

 Was Esther's exercise of her power of appointment valid even though the trust required that the power be exercised by will or codicil? After examining the pertinent provisions of the Probate Code, we conclude that the exercise was invalid.

 We begin with established principles of statutory construction. In interpreting a statute, we ascertain the Legislature's intent so as to effectuate the purpose of the law. To determine the Legislature's intent, we first examine the words of the statute, making sure that we give the language its usual and ordinary meaning. If the language contains no ambiguity, then we presume the Legislature meant what it said. In this situation, the plain meaning of the statute governs. We must be sure to read the statutory words in context, considering the nature and purpose of the statutory enactment. We will not view sentences in isolation but will analyze them in light of the statutory scheme. (*Lewis* v. *Superior Court* (1999) 19 Cal.4th 1232, 1239 [82 Cal.Rptr.2d 85, 970 P.2d 872].)

 Section 630 provides, in pertinent part, "(a) Except as otherwise provided in this part, if the creating instrument specifies requirements as to the manner, time, and conditions of the exercise of a power of appointment, the power can be exercised only by complying with those requirements."

Section 631 states, in pertinent part: "(a) Where an appointment does not satisfy the formal requirements specified in the creating instrument as provided in subdivision (a) of Section 630, the court may excuse compliance with the formal requirements and determine that exercise of the appointment was effective if both of the following requirements are satisfied: [¶] (1) The appointment approximates the manner of appointment prescribed by the donor[;] [¶] (2) The failure to satisfy the formal requirements does not defeat the accomplishment of a significant purpose of the donor. . . ."

---

[5]The trial court also dismissed without leave to amend Allan's petition in case No. 1-97-PR139702 but Allan has not appealed the decision in case No. 1-97-PR139702.

According to Catch, section 631 only applies to excuse the failure to comply with donor-imposed requirements that exceed requirements imposed by law. Under this view, section 631 cannot be used to save Esther's attempted exercise of the power of appointment because the appointing document, which was unsigned by any witnesses, did not satisfy the legal prerequisites for wills or codicils.

We agree with Catch. Our conclusion is based upon the Law Revision Commission Comments and legislative history. Examination of these materials is necessary because section 631 is ambiguous. Specifically, section 631 potentially excuses compliance with "formal requirements specified in the creating instrument" as provided in section 630, subdivision (a). Section 631's use of the word "formal" creates some ambiguity because that word is not used under section 630. The words "specified in the creating instrument" also create ambiguity since the words could be construed to exclude legal requirements on the grounds that legal requirements for the appointment instrument are expressed only implicitly.

Because the statutory language does not unambiguously reveal whether section 631 may be invoked to excuse the failure to comply with requirements imposed by law for the appointing instrument, we turn elsewhere for guidance.

The legislative history reveals that section 631 was enacted in 1992, as part of a bill relocating the power of appointment statutes, including section 630, from the Civil Code to the Probate Code. (Stats. 1992, ch. 30, § 2, p. 114.) In its report, the California Law Revision Commission recommended that section 631 be enacted. (Relocation of Powers of Appointment Statute (Sept. 1991) 21 Cal. Law Revision Com. Rep. (1991) p. 91.) Consistent with that report, section 631 was enacted by the Legislature without change. (Stats. 1992, ch. 30, § 2, p. 114.) Consequently, the 1992 Law Revision Commission Comments provide us with a valuable tool in ascertaining section 631's meaning. ■ "Explanatory comments by a law revision commission are persuasive evidence of the intent of the Legislature in subsequently enacting its recommendations into law." (*Brian W* v. *Superior Court* (1978) 20 Cal.3d 618, 623 [143 Cal.Rptr. 717, 574 P.2d 788]; *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508].) "This is particularly true where the statute proposed by the commission is adopted by the Legislature without any change whatsoever and where the commission's comment is brief, because in such a situation there is ordinarily strong reason to believe that the legislators' votes were based in large measure upon the explanation of the commission in proposing the bill." (*Van Arsdale* v. *Hollinger*, *supra*, 68 Cal.2d 245, 250; see also

*Continental Ins. Co.* v. *Crockett* (1985) 177 Cal.App.3d Supp. 12, 26 [223 Cal.Rptr. 772].)

■ There are four reasons why the 1992 Law Revision Commission Report demonstrates that section 631 only applies to donor-imposed requirements that exceed the requirements imposed by law for the appointment instrument.[6] First, the commission's comments themselves expressly distinguish between requirements imposed by law and additional formal requirements. The comments explain: "Under subdivision (a), where the donor imposes formal requirements with respect to the instrument of appointment *that exceed the requirements imposed by law for the instrument,* the donor's purpose in imposing the *additional formal requirements* must be determined. To the extent the failure to comply with the *additional formal requirements* will not undermine the accomplishment of a significant purpose, the court in applying equitable principles may save the appointment if the appointment approximates the formal requirements imposed by the donor. . . ." (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code, *supra*, § 631, p. 30, italics added.) This explanation indicates that section 631 cannot be invoked to excuse noncompliance with requirements imposed by law for the appointing instrument. Specifically, the comments reveal that a prerequisite to section 631's application—that the noncompliance not defeat the accomplishment of a significant purpose of the donor—need only be considered when the additional requirements exceed the legal prerequisites for the instrument.

Second, the comment repeatedly refers to *"additional* formal requirements," which supports the conclusion that section 631 cannot be used to

---

[6]The comments to section 631 provide, in pertinent part: "Section 631 is new. Subdivision (a) is drawn from Section 18.3 of the Restatement (Second) of Property (Donative Transfers) (1986). See also Restatement of Property § 347 (1940). The general rule in subdivision (a) is consistent with Estate of Wood . . . .

"The formal requisites of an appointment described in subdivision (a) include both the formal requirements imposed by the donor that are significant and those that are of minor importance. For an exception, however, see subdivision (b). Unless some significant purpose is accomplished by an additional formal requirement imposed by the donor, equitable relief from the rigid enforcement of the additional formality is available. The rule stated in this subdivision arose in the English courts of Chancery and is still expressed as a rule that 'equity will aid the defective execution of a power.' Restatement (Second) of Property (Donative Transfers) § 18.3 comment *a* (1986).

"Under subdivision (a), where the donor imposes formal requirements with respect to the instrument of appointment that exceed the requirements imposed by law for the instrument, the donor's purpose in imposing additional formal requirements must be determined. To the extent the failure to comply with the additional formal requirements will not undermine the accomplishment of a significant purpose, the court in applying equitable principles may save the appointment if the appointment approximates the formal requirements imposed by the donor. See Restatement (Second) of Property (Donative Transfers) § 18.3 comment *c* (1986) . . . ." (21 Cal. Law Revision Com. Rep., *supra*, com. to § 631, pp. 108-109, reprinted at 52 West's Ann. Prob. Code, foll. § 631 (1999 pocket supp.) p. 30.)

excuse the failure to satisfy legal requirements. For example, the comment states that section 631, subdivision (a)'s formal requirements "include both the formal requirements imposed by the donor that are significant and those that are of minor importance. . . . Unless some significant purpose is accomplished by *an additional formal requirement imposed by the donor*, equitable relief from the rigid enforcement of the *additional formality* is available." (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code, *supra*, § 631, p. 30, italics added.) Similarly, when the donor imposes requirements that exceed the legal requisites for the appointment instrument, the comments explain that "the donor's purpose in imposing additional formal requirements must be determined." The repeated reference to *"additional* formal requirements" (*ibid.*, italics added) suggests that section 631 only applies to excuse compliance with those requirements imposed "in addition" to something, i.e., requirements imposed as a matter of law. If we are to give meaning to the commission's use of the term "additional," then it seems clear that we must conclude that section 631 does not apply to excuse compliance with requirements imposed by law upon the appointment instrument.

Third, the Restatement provisions cited in the comment also support our interpretation. Sections 630 and 631 were drawn from provisions in the Restatement of Property and Restatement Second of Property, Donative Transfers (1986). (See Rest.2d Property, Donative Transfers (1986) § 18.3; Rest., Property (1940) § 346; Rest.2d Property, Donative Transfers (1986) § 18.2.) The Restatement provisions uniformly reveal that the failure to comply with requirements imposed by law for the appointment instrument cannot be excused. For example, section 18.3, comment b, states: "Formal requirements imposed by law with reference to instruments of appointment are always regarded as fulfilling a significant purpose. Consequently, their approximation is never sufficient in either law or equity to make the appointment effective." (Rest.2d, Property, Donative Transfers, *supra*, § 18.3, com. b, p. 257.) Similarly, the illustrations under section 18.3 also support our conclusion since none of them involve circumstances validating an appointment when requirements imposed by law were not satisfied.

Although there are differences between Restatement Second of Property, section 18.3 and section 631, the similarity between the comments under both sections strongly suggests that section 631, like the Restatement provision, was not intended to apply to excuse the failure to satisfy requirements imposed by law upon the appointment instrument. Indeed, it appears that section 631's drafters synthesized section 18.3, comment b into section 631 by adding the "significant purpose" language under section 631, subdivision (a)(2). The Law Revision Commission Comment also implicitly incorporated section 18.3, comment b, by inserting the words "imposed by the

donor," which are not included under the Restatement comments, in the sentence "the formal requisites of an appointment described in subdivision (a) include both the formal requirements *imposed by the donor* that are significant and those that are of minor importance. . . ." (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code, *supra*, § 631, p. 30, italics added.) Finally, Restatement section 18.2, which is cited under section 630, refers to the precise situation presented here. Comment b provides, "When the donor prescribes that the power be exercised 'by will,' it is to be inferred that the donor meant by these words an instrument which is formally sufficient to be admitted to probate under the applicable law. . . ." (Rest.2d, Property, Donative Transfers, *supra*, § 18.2, com. b, p. 250.)

Accordingly, even though there are differences between section 631 and the Restatement provisions, the fact remains that section 631 was drawn from those provisions, and none of the provisions permit a court to excuse compliance with legal prerequisites. It is unlikely that section 631's drafters intended to incorporate within section 631 an exception specifically prohibited under the Restatement provisions from which section 630 or 631 was drawn. If that had been intended, then the commission's comments could have so stated, as the commission did with respect to other aspects of the Restatement provision: "The rule in section 631(a) is not limited to the favored class of appointees described in the Restatement rule." (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code, *supra*, § 631, p. 30). The commission's failure to make a similar distinction with regard to requirements imposed by law for the appointment instrument strongly supports our interpretation.

Fourth, *Estate of Wood* (1973) 32 Cal.App.3d 862 [108 Cal.Rptr. 522, 60 A.L.R.3d 123] also supports the view that section 631 only applies to donor-imposed requirements that exceed the legal requirements for the appointment instrument. The Law Revision Commission's Comment expressly state that section 631, subdivision (a) is consistent with *Wood*. In *Wood*, the court considered whether a power of appointment was validly exercised. Among other things, the power had to be exercised " 'only by a written instrument other than a will delivered to the Trustee during her lifetime . . . .' " (32 Cal.App. 3d at p. 866, italics omitted.) One of the questions was whether the appointment was valid even though the appointing instrument was not delivered to the trustee during the donee's lifetime. In analyzing this issue, the court examined the donor's purposes in requiring that the appointing instrument be delivered to the trustee during the lifetime of the donee. According to *Wood*, these purposes included assuring the authenticity of the document and protecting the trustee, who, following the death of the donee, might have otherwise distributed principle or income in

ignorance of an attempted exercise of the power that had not been delivered to the trustee. (*Id.* at p. 881.)

The *Wood* court decided the exercise of the appointment power was valid. The court reasoned: "None of these purposes will be thwarted in the present case by giving effect to the 1970 appointing instrument. Its authenticity has not been questioned; the donee did all it was possible for her to do to have it delivered to the trustee during her lifetime; and the trustee has not paid out to the claimants in default of the exercise of the power." (*Estate of Wood*, *supra*, 32 Cal.App.3d at p. 883.) *Wood* shows that courts may look to the donor's purposes in imposing additional requirements for the exercise of the power of appointment. *Wood* did not involve an attempt to excuse compliance with requirements imposed by law. It is therefore consistent with our interpretation and does not support Allan's argument that section 631 may be invoked to excuse legal prerequisites for the appointment instrument.

Our result is also consistent with the Commission's statement in its Recommendation on the Relocation of Powers of Appointment Statute, *supra*, 21 California Law Revision Commission Report 91 (1991). There, the commission stated: "The existing statute provides that, if the instrument creating the power of appointment 'specifies requirements as to the manner, time, and conditions' of its exercise, the 'power can be exercised only by complying with those requirements.' However, case law has applied a more forgiving standard. In *Estate of Wood* [fn. omitted] the court upheld exercise of a power of appointment that did not strictly comply with the donor's requirement of delivery on the grounds there was substantial compliance and that no presumed purpose of the donor would be thwarted. The Restatement (Second) of Property (Donative Transfers) also provides for judicial relief from strict compliance with *special requirements imposed by the donor on exercise of the power.* [¶] The Commission recommends revision of the strict compliance rule to codify the general rule of *Estate of Wood* and make the statute consistent with the Restatement rule. . . ." (*Id.* at p. 96, fns. omitted.) The commission's reference to "special requirements imposed by the donor" and *Estate of Wood* also demonstrates that section 631 was only meant to apply to special donor-imposed requirements, like the delivery requirement in *Estate of Wood*, that exceed the requirements imposed by law for the appointing instrument. Nothing in the commission's comments suggests that section 631 can be used to excuse the failure to satisfy legal requirements for the appointment instrument.

There are important policy considerations supporting our interpretation. The same considerations which prevent a court from excusing the failure to

comply with the mandatory legal requirements for a will, should, by parity of reasoning, also prevent a court from excusing noncompliance with those legal requirements in the context of an exercise of a testamentary power of appointment. ■ "Attestation itself, unlike ceremonies associated with it, has been nearly as fundamental in the statutory schemes as signature and writing. When the Wills Act requires attestation, it directs that persons additional to the testator participate in the execution of the will. Their participation is the major factor in ceremonializing the execution, and those who survive the testator will be able to testify to due execution. The increment which attestation adds to the cautionary and especially to the evidentiary functions seems unlikely to be achieved by other means. As compared with the will substitutes and the holographic will, the attestation requirement may seem to set the level of cautionary and evidentiary functions unreasonably high, *but that is the legislature's policy choice.*" (Langbein, *Substantial Compliance with the Wills Act* (1975) 88 Har. L.Rev. 489, 521.)

■ Section 630, subdivision (b) also supports our result. It provides: "Unless expressly prohibited by the creating instrument, a power stated to be exercisable by an inter vivos instrument is also exercisable by a written will." By including this exception, but not including a similar exception when a power is to be exercised by will, the Legislature has indicated that a power to be exercised by will must, in fact, be exercised by a will. This exception also indicates that section 631 was not meant to apply to legal prerequisites for the appointment instrument since the exception would seemingly be unnecessary if section 631 included legal prerequisites within its scope.

Appellant cites *Estate of McNeill* (Me. 1983) 463 A.2d 782 but *McNeill* does not assist appellant's cause. *McNeill* is not a California case, and therefore has nothing to do with section 631's interpretation. Moreover, even if we were to give it persuasive power, *McNeill* would not change our decision because *McNeill* did not involve a total failure of attestation but involved a testamentary power of appointment where there were only two witnesses, instead of the three required under the pertinent state law. Further, although *McNeill* relied upon section 18.3 of the Restatement Second of Property, *McNeill* never discussed how section 18.3 applied to requirements imposed by law upon the appointing document.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

See footnote, *ante*, page 648.

*Disposition*

The judgment is affirmed.

Cottle, P. J., and Premo, J., concurred.